GEORGE A. DOWDEN, PLAINTIFF IN ERROR, v. W. WET-MORE CRYDER DEFENDANT IN ERROR.

1. If one who is known to be an agent for the negotiation of his principal's draft, transfer the draft to a third person in payment of the agent's debt, that person will acquire no title to the draft, however honest his actual intention may be.
2. The declarations of an agent, although accompanying his acts, constitute no evidence of the extent of his authority.
3. If an agent transcends his authority and commits a breach of trust by transferring his principal's property to pay his own debt, the principal

will not be deemed to have ratified the act until he has notice of the breach of trust.

4. If a transaction between an agent and another person be entire, and be known to such other person to be a breach of trust on the part of the agent, the principal is not bound at all, although some portions of the transaction might, if standing alone, have been within the agent's power and duty.

5. Persons dealing with one who is known to be a special agent are chargeable with knowledge of the extent of his authority.

6. A special agent authorized to negotiate a draft for cash at a reasonable discount, is not empowered to negotiate it for cash and merchandise.

On error to the Supreme Court.

For the plaintiff in error, *Frederic W. Stevens.*

For the defendant in error, *E. A. & W. T. Day.*

The opinion of the court was delivered by

DIXON, J.    E. H. Carmack drew a draft on the defendant for $3,200, payable four months after date to his own order, and the defendant accepted it for Carmack's accommodation. Thereupon Carmack endorsed it and delivered it to one Barnett with authority to negotiate it for cash at a reasonable discount. Barnett transferred it to the plaintiff for $2,060 cash and a diamond necklace which they valued at $1,100, and then absconded. At the time of the transfer the plaintiff knew that Barnett was not the owner of the draft, but held it merely as agent of Carmack for negotiation. Carmack repudiated the transfer, and the draft went to protest; hence this suit.

At the trial in the Essex Circuit the cause was submitted to the jury on the question of fact, whether the necklace prior to the transfer was the property of the plaintiff, or was the property of Barnett held by the plaintiff to secure Barnett's debt to him; and the jury were instructed that in the former case the plaintiff might recover, but could not in the latter. They found for the defendant.

The cause is before us on exceptions to the charge of the

judge and to his refusals to charge in accordance with the plaintiff's requests.

First, the plaintiff asked the judge to charge that the plaintiff's title to the draft could not be invalidated unless the circumstances under which he took it proved actual fraud—that mere carelessness would not impair his title.

This legal rule is thoroughly established (*Hamilton* v. *Vought*, 5 *Vroom* 187; *Copper* v. *Jersey City*, 15 *Id.* 634), but it is inapplicable to the present case. The defect found in the plaintiff's title sprang, not from the law relating to commercial paper, but from the law of agency. It is a universal principle in the law of agency that the powers of the agent are to be exercised for the benefit of the principal and not of the agent or third parties. 1 *Am. Lead. Cas.* (*5th ed.*) 687. Persons dealing with one whom they know to be an agent and to be exercising his authority for his own benefit, acquire no rights against the principal by the transaction. *Stainer* v. *Tysen*, 3 *Hill* 279; *Mecutchen* v. *Kennedy*, 3 *Dutcher* 230; *Camden Safe Deposit Co.* v. *Abbott*, 15 *Vroom* 257; *Union National Bank* v. *Underhill*, 102 *N. Y.* 336. Such a transaction is usually and perhaps properly spoken of by the courts as fraudulent, but, however honest the intention of the parties, the agent's act is invalid merely because circumstances known to both prove it to be *ultra vires.* In the present case the plaintiff sought to get rid of the imputation of bad faith by claiming that Barnett had told him he had authority to accept the diamonds in exchange for the draft, but it was not pretended that such authority was supposed to have been given with knowledge that the agent had a personal interest in the redemption of the diamonds. Nothing short of power expressly granted to the agent to deal with the draft for his own benefit would validate such a use of it in favor of one cognizant of the facts. Consequently, on the fact found by the jury, the plaintiff's title was defeated, if not by his actual fraud, by his knowledge of the agent's misappropriation of the principal's property.

This request was rightly refused, save as its substance was embodied in the charge delivered.

The second request was to charge that if the agent represented to the plaintiff that he had authority to exchange the draft for money and diamonds, and the plaintiff believed him, Carmack was estopped from denying the authority, and *Campbell* v. *Nichols,* 4 *Vroom* 81, is cited to support this proposition.

For reasons already stated, this request did not reach the merits of the case, because it was not claimed that Carmack had any notice of his agent's interest in the diamonds. But aside from this, the proposition was intrinsically unsound.

The declarations of an agent, although accompanying his acts, constitute no evidence of the extent of his authority. *Story Ag.*, § 136 ; *Brigham* v. *Peters,* 1 *Gray* 139 ; *Baker* v. *Gerrish,* 14 *Allen* 201 ; *Gifford* v. *Landrine,* 10 *Stew. Eq.* 127, 628 ; *Farmers' Bank* v. *Butchers' Bank,* 16 *N. Y.* 134. The decision in Campbell *v.* Nichols does not militate with this rule. The representation there upheld as an estoppel against the principal related, not to the scope of the agent's power, but to an extrinsic circumstance affecting the character of the instrument which the agent was empowered to dispose of, and which circumstance would be within the cognizance of the agent or his principal, but not of those dealing with the agent. The distinction between a representation by an agent as to such extrinsic facts and his representation as to the scope of his authority is clearly drawn in *Farmers' Bank* v. *Butchers' Bank, ubi supra.*

The next request was to charge that if the defendant told the plaintiff, before he purchased the draft from Barnett, that the draft was all right and would be paid, then in the absence of any fraudulent conduct on the plaintiff's part, he would be entitled to recover.

Such a charge was unnecessary. If the defendant had so stated, his evident meaning was that the draft would be paid to the lawful holder, but that had no relevancy to the point in controversy, which was whether the plaintiff owned the draft.

The next request was to charge that if Barnett, after he had exhibited the diamonds to Carmack, went to Boston with Carmack's permission to dispose of them, that was a ratification of the transaction.

There are two faults in this request—*First*. It ignores the undisputed fact that, at the time of the supposed ratification, Carmack had no notice of his agent's breach of trust in using the draft to redeem his own property from pledge. Without such notice he could not be charged with ratification. *Story Ag.*, § 239; *Gulick* v. *Grover*, 4 *Vroom* 463; *Titus* v. *Cairo and Fulton R. R. Co.*, 17 *Id.* 393. *Secondly*. The matters referred to in the request were, at most, only evidence of ratification, not actually the thing itself.

The last exception is taken to the judge's charge that if the plaintiff was entitled to a verdict it should be for the full amount of the draft, the plaintiff contending that, if Barnett was a special agent entrusted with the duty of obtaining money on the draft, then in so far as he pursued his authority, by getting money upon it, he bound his principal, and the plaintiff became the owner of the draft *pro tanto*, and might recover $2,060.

This position of the plaintiff is untenable. The transaction between him and Carmack's agent was a unit. By it the agent was to give the plaintiff title to the draft, in consideration partly of a personal benefit enuring to the agent. The plaintiff, as we have seen, is chargeable with knowledge that the agent had no power to bind his principal in such a transaction; and, therefore, he cannot claim to have received any title from the principal. The rule which would preclude the principal from ratifying part of this transaction and repudiating the rest (*Story Ag.*, § 250), precludes the plaintiff from forcing upon him such partial adoption. Certainly if, after the arrangement was made between the plaintiff and Carmack's agent, the plaintiff and Carmack had met, and the latter had said, "I will accept the money part of the consideration and give you a title *pro tanto* in the draft, but will not accept the diamonds," the plaintiff would have had

the right to decline, upon the ground that he had assented to no such bargain. Carmack's rights rest upon a similar foundation.

There is no error in any of the matters assigned.

In our view of the evidence the trial might properly have been concluded by a direction that the jury find a verdict for the defendant.

Barnett was only a special agent, and his authority was to negotiate the draft for cash at a reasonable discount. This did not authorize him to negotiate the draft for cash and merchandise. The plaintiff dealt with him as such agent, and was, therefore, bound to ascertain the extent of his power. *Black* v. *Shreve*, 2 *Beas.* 455; *National Iron Armor Co.* v. *Bruner*, 4 *C. E. Gr.* 331; *Perrine* v. *Cooley*, 12 *Vroom* 322; *S. C.*, 13 *Id.* 623. The contract between the plaintiff and the agent having been beyond the agent's authority, it gave the plaintiff no rights against the principal. The attempt to prove ratification, even without regard to the agent's interest in the diamonds, was, we think, a total failure. The jury might, therefore, have been instructed that the plaintiff had no title to the draft and could not recover upon it.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH.   10.

*For reversal*—None.