ISRAEL A. KELSEY, appellant,

*v.*

THE NEW ENGLAND STREET RAILWAY COMPANY et al., respondents.

[Filed March 4th, 1901.]

A special committee of the board of directors of a private corporation, being empowered by the board to contract for the sale of the shares of stock in another company owned by the corporation, stipulated in the contract which they made that the members of the committee should personally have an option to deliver their own shares in the same company to the same vendee at the same price. Other stockholders of the corporation also owned shares in the same company, but no such option was secured for them.—*Held*, that the court would not decree specific performance against the objection of the corporation and its stockholders.

On appeal from the order of August 8th, 1900, advised by Vice-Chancellor Stevens, whose opinion is reported in *15 Dick. Ch. Rep. 230.* No opinion on final hearing.

*Mr. Flavel McGee, Mr. John G. Johnson* and *Mr. Charles E. Morgan, Jr.* (of Philadelphia), and *Mr. Samuel C. Morehouse* (of New Haven), for the appellant.

*Mr. Charles L. Corbin* and *Mr. William W. Cook* (of New York), for the respondents.

The opinion of the court was delivered by

Dixon, J.

The New England Street Railway Company, a corporation organized under the act concerning corporations, was formed, *inter alia,* to purchase, hold, sell, invest, trade and deal in stocks. In October, 1899, it owned seventeen thousand nine hundred and fifty-four shares of stock of the Winchester Avenue Railroad Company. On October 9th of that year the board of directors of the New England company passed a resolution appointing a committee, consisting of the president and two other directors, "to receive any offers that might be made for the property." The committee opened negotiations with the complainant. On March 26th, 1900, the board of directors passed another resolution, as follows:

"On motion duly recorded it was unanimously voted that the committee appointed at the meeting of directors October 9th, 1899, be and are hereby authorized and empowered to accept any offers that may be made for the stock in the Winchester Avenue R. R. Co., owned by this company, which in their judgment are for the best interests of all concerned, and to make such agreements with reference thereto as they may be advised are necessary for the delivery of the stock and payment therefor. All such agreements to be subject to ratification by the stockholders of the company."

Accordingly the committee entered into the following written agreement:

"New Haven, Conn., March 29th, 1900.

"Acting in behalf and by the written consent of the directors of the New England Street Railway Company and appointed by the directors for the express purpose, we do hereby give Israel A. Kelsey of West Haven, Conn., the option to buy the seventeen thousand nine hundred and fifty four (17,954) shares of the capital stock of the Winchester Ave. Railroad Company, belonging to the New England St. R'w'y Co., at the price of forty-eight ($48.00) dollars per share.

"Said option to purchase to expire April 10th, 1900, at 3 p. m.

"By said April 10th, said Kelsey must signify his intention to take up and make payment therefor as follows:

"Fifty thousand dollars in cash or certified check on that date and by June 9th, 1900, the balance of the purchase-price. Said money to be deposited in any trust company we may indicate.

"In case the final payment is not made by June 9th, 1900, then said fifty thousand dollars shall be forfeited.

Kelsey *v.* New England St.· Ry. Co.

"The sum of one thousand dollars is hereby received and acknowledged as paid this date to bind this option and shall be considered part of the purchase payment when final payment is made. But said one thousand dollars shall be returned if an examination of the books do not warrant the statements made. It is further agreed that we shall have the right to deliver at the same price to said Kelsey not to exceed (2500) twenty-five hundred shares of Winchester Ave. R. R. Co., now owned by ourselves in Boston and vicinity.

"EDWARD E. FLOYD,
"JAMES C. ELMS,
· "A. R. MITCHELL."

The bill now before us was filed by Kelsey to compel the specific performance of the agreement above set forth, but such relief was denied in the court of chancery on the ground that, by the terms of the resolution under which it was made, the ratification of the stockholders was required to render it obligatory, and had been refused.

This court is not prepared to adopt the construction thus put upon the resolution of March 26th, 1900, but nevertheless we think the court below was right in denying specific performance of the contract.

The committee was only a special agent of the corporation, and therefore Kelsey, in bargaining with it, was chargeable with notice of its powers. *Milne* v. *Kleb, 17 Stew. Eq. 378; Dowden* v. *Cryder, 26 Vr. 329.* Moreover, the agreement itself recited that the committee was acting "by the written consent of the directors," and this made it his duty to learn what that written consent, viz., the resolution, disclosed. We must therefore assume the knowledge of Kelsey that the members of the committee were not authorized by their principals to introduce into their negotiations or bargain any consideration advantageous to themselves exclusively. Notwithstanding this, he, in his dealings with them, gave to them a personal option to deliver to him at the contract price other shares of the Winchester company then owned by them. The testimony shows that at the time several thousand shares of the Winchester company were held by other stockholders of the New England company, for whom the contract made no provision.

The members of the committee, being themselves directors of the company as well as representatives of the board of directors,

occupied a fiduciary position in which they are practically to be regarded as trustees for the stockholders as *cestuis que trust. Pearson* v. *Concord Railroad Corporation, 62 N. H. 537;* Barnes v. *Brown, 80 N. Y. 527; Guild* v. *Parker, 14 Vr. 430; Williams* v. *McKay, 13 Stew. Eq. 189; Rabe* v. *Dunlap, 6 Dick. Ch. Rep. 40; Williams* v. *Page, 24 Beav. 654.* Acting in this capacity, they were not at liberty to use their power of bargaining for the corporation so as to secure for themselves an exclusive personal benefit; if they did so use their authority, their transaction was voidable against a person knowingly participating in their abuse of power. *1 Beach Corp.* §§ *240, 241; Stewart* v. *Lehigh Valley Railroad Co., 9 Vr. 505, 522; Gardner* v. *Butler, 3 Stew. Eq. 702, 721; Wardell* v. *Railroad Co., 103 U. S. 651.* A contract is not enforceable against the corporation when the party dealing with the directors has given to any of them a secret interest in the contract. *Cook Stock.* § *649; Rutland Electric Co.* v. *Bates, 68 Vt. 579; 17 Am. & Eng. Encycl. L. (1st ed.) 91.*

It is indisputable that the personal advantage which the members of the committee thus attempted to secure for themselves was never assented to by the board of directors or by the stockholders, and it may have induced those members to accept for the property of the company a less favorable offer than might have been otherwise obtained.

We therefore are of opinion that the agreement of March 29th, 1900, should not be enforced against the corporation and its stockholders, and that the order of August 8th, 1900, and the final decree of November 2d, 1900, dismissing the bill, should be affirmed.

*For affirmance*—The Chief-Justice, Dixon, Collins, Fort, Garretson, Hendrickson, Bogert, Krueger, Adams, Vreden-burgh, Voorhees—11.

*For reversal*—None.