FANNIE L. RYLE, DEFENDANT IN ERROR, v. THE MANCHESTER BUILDING AND LOAN ASSOCIATION, PLAINTIFF IN ERROR.

Submitted March 25, 1907—Decided June 17, 1907.

1. When the facts are not in dispute, the question as to the authority of an alleged agent to act for the principal is one for the court to determine.
2. The declarations of the alleged agent, although accompanying his acts, are not competent to establish either the fact or the extent of his agency.
3. The failure of a creditor to demand and collect with promptness the money due to her upon certain matured shares in a mutual building and loan association does not warrant an inference of ratification of the act of another in drawing and using the money while she is without full knowledge of the facts and circumstances of the case.
4. The direction of a verdict for the plaintiff approved.

On writ of error to the Passaic Circuit Court.

This was an action upon contract brought in the Circuit Court in and for the county of Passaic by the defendant in error against the plaintiff in error.

The declaration contained the common counts for money, and annexed thereto was a notice substantially as follows:

"This action is brought to recover the amount due to the plaintiff from the defendant for the value of five shares in the stock of the defendant corporation, belonging to the plaintiff and being in the sixth series, 1893, which matured October 1st, 1904, which value, to wit, the sum of $1,000, the said defendant has, nevertheless, wrongfully refused, and still doth refuse, to pay to the said plaintiff."

The defendant put in a plea of the general issue.

The action came on for trial before the Circuit judge and a jury, and the testimony exhibited the case following:

For the plaintiff. In the month of February, 1893, the plaintiff became a member of the defendant association, taking five shares in the sixth series, 1893, through the agency of Peter Ryle, her husband. Similar investments were made by him for other members of the family. He died soon afterward.

An account was opened in the association's ledger in the name of the plaintiff, and a pass-book was issued to her. This book was such as was issued to every member. In it was entered, from time to time, the payment of her dues, and it was, until its surrender, the evidence of her claim upon the association. The book never was in the actual possession of the plaintiff. From the time of the investment by Peter Ryle onward it was in the hands of William H. Belcher, of Paterson, counsel of the association, and later its president.

The dues, at the rate of $5 per month, were paid upon the five shares with regularity, and dividends were also payable thereon, so that in October or November, in the year 1904, by a declaration of the directors, the shares matured, and were of the total value of $1,000, which sum then became due and payable to the plaintiff, according to the contract of the parties.

The source whence the dues were derived was, in the first

place, the rents of certain realty, part of the estate of Peter Ryle, deceased. Then, as needed, checks were signed by John H. Reynolds and the plaintiff, as executors, and given to W. H. Belcher, who had the charge of the books and represented the association. The plaintiff was acquainted with Belcher, but he transacted no business for her, at least on any direct employment, although there was some ground for inference that he had assumed an authority over the realty aforementioned, with the acquiescence of the plaintiff, and had at times advanced money for the payment of dues.

At the foot of the account of the plaintiff, in the "individual ledger" of the defendant, appeared the words "Matured and paid off, October 1st, 1904. Ck. [check] 1988." The plaintiff knew of the maturity of her shares, at least at the time of the trial, but how much earlier she may have known it did not appear. She paid no dues, knowingly, after October, 1904. The plaintiff herself did not at any time receive the money due and payable on the matured shares, or any part thereof; indeed, she made no effort to collect the money at or shortly after the maturing. She explained this by saying that she was never notified of the maturing by the association, and that she considered the institution a good place to have one's money in.

In August of the year 1905 W. H. Belcher disappeared, leaving behind him many creditors to whom he was indebted. This made the plaintiff apprehensive, and she went to her coexecutor, Reynolds, who was a lawyer, and asked him to look into the matter. Then she discovered that the money due upon her shares had been paid by a check, but she had never had it.

For the defendant. The secretary of the association testified that W. H. Belcher had acted for Mr. Ryle at the original taking of the shares; that the dues were paid to him by the personal check of Belcher, and that he alleged that he was the attorney of the Ryles, among them, of the plaintiff.

The shares having matured in October, 1904, the association's check, No. 1988, was drawn November 7th, 1904, for the payment of $1,000 to the order of Fannie Ryle. It was

paid through the bank on which it was drawn, upon the endorsements "Fannie Ryle, W. H. Belcher, Atty.; W. H. Belcher." Belcher directed the making out of the check in this form, and at the same time stated that he was Mrs. Ryle's attorney in all her business.

There was no evidence whatever that either Belcher's acts or words were in anywise known to the plaintiff.

When both of the parties had rested, a motion was made for the direction of a verdict for the defendant. This was denied, and an exception was sealed. Then a motion was made to direct a verdict for the plaintiff. This was allowed, and an exception sealed.

A verdict was found for the plaintiff in the sum of $1,010.18, in accordance with the direction of the court, and judgment was entered thereon.

Thereupon a writ of error was sued out, and error is assigned on the matters excepted to.

For the plaintiff in error, *Jacob Willard De Yoe* and *Griggs & Harding*.

*First.* The trial court erred in refusing to permit the jury to consider whether the facts were sufficient to support an inference that an actual or apparent authority to draw the money as it was drawn had been given by the plaintiff to W. H. Belcher.

*Second.* That Belcher's statement of his authority was admitted in evidence without objection, and was not subsequently contradicted by the plaintiff, made the case one for the jury.

*Third.* That the plaintiff never attempted to collect the money due upon the shares after their maturity in October, 1904, was evidence of an understanding that Belcher was to draw the money and invest or use it for her.

*Fourth.* The trial court erred in directing a verdict for the plaintiff.

*Contra, John H. Reynolds (Daniel L. Campbell* with him on the brief).

The opinion of the court (the foregoing statement of the case having been made) was delivered by

GREEN, J.   This action was brought to recover the matured value of five shares in the stock of the defendant association. The defence was a previous payment thereof to the plaintiff's authorized agent.

It has been said that a shareholder cannot sue at law for the recovery of the value of full-paid stock, but must proceed in equity.   *End. Build. Asso.* (*2d ed.*), §§ 117, 118.   This notion has some countenance in *Campbell, Receiver,* v. *Perth Amboy Association* (1901), 38 *Vroom* 71, but it is now settled in this court that, whatever be the truth under different conditions, when a board of directors has power to declare that a series of shares has matured, and does so declare, a shareholder in this series ceases to be a member and becomes a creditor entitled to sue at law.   *Cunningham* v. *Mutual Loan and Building Association* (1905), 43 *Id.* 175, 179, 181.

*First.*   The first point made by the counsel of the plaintiff in error has been considered in *Belcher* v. *Manchester Building and Loan Association, ante p.* 833, and is determined by that case.   If anything further need be said, it is that, if possible, there is in the present case less suggestion of an agency in William H. Belcher.   At the original taking of the five shares by the plaintiff, the evidence was that she was represented by her husband and the association by Belcher.   The latter was not her agent for the purpose of making an investment, much less for the purpose of collecting a debt.   The leaving of the plaintiff's pass-book in the hands of W. H. Belcher, however injudicious that act may have been, was for convenience only, to the end that he who was to receive the dues for the association might, for the advantage of all concerned, enter the payments, as and when made, in the pass-book.   That Belcher had no real or supposed authority to receive the value of the shares was plainly shown by the making of the check for $1,000 payable to the order of the plaintiff herself.   Herein the proof of the conduct of the defendant accords with the contention of the plaintiff, and

the evidence admitted of but one conclusion. The question as to Belcher's actual or apparent authority to draw the money was therefore one for the court, and not for the jury. *Gulick* v. *Grover* and *Holmes* v. *Grover* (1868), 4 *Vroom* 463; *Agricultural Insurance Co.* v. *Fritz* (1897), 32 *Id.* 211.

*Second.* It does not avail the defendant that W. H. Belcher's declaration of his own authority was admitted without objection, and was not subsequently contradicted by the plaintiff. She had already denied the authority on the part of Belcher to act for her in any business, and a subsequent contradiction was not needed to maintain her action. As evidence for the defendant, Belcher's statements were clearly irrelevant, for they were not shown to have been made in her presence, or in anywise brought to her knowledge. Furthermore, it is settled law with us that the declarations of the person alleged to be the agent, although accompanying his acts, are not competent to establish either the fact or the extent of the authority. *Gifford* v. *Landrine* (1883), 10 *Stew. Eq.* 127; *affirmed, Id.* 628; *Dowden* v. *Cryder* (1893), 26 *Vroom* 329, 332.

*Third.* The failure of the plaintiff to demand and collect the money value of her shares upon the maturing of the shares, or shortly afterward, may not lawfully be construed as a ratification of Belcher's act in drawing and using the money. This is manifestly so for two reasons:

(*a*) The fact of the maturing of the shares, and the fact of Belcher's drawing the money value thereof, are not shown to have been made known by anyone to the plaintiff until after Belcher's disappearance. Ratification of Belcher's actions cannot be inferred from anything that the plaintiff did or failed to do while she was without full knowledge of all the facts and circumstances of the case. *Gulick* v. *Grover* and *Holmes* v. *Grover* (1868), 4 *Vroom* 463, 471; *Titus et al.* v. *Cairo and Fulton Railroad Co.* (1884), 17 *Id.* 393, 420; *Dowden* v. *Cryder* (1893), 26 *Id.* 329, 333. After the plaintiff acquired knowledge of the matter her conduct imported no ratification.

(*b*) The contention of the defendant on this point is, in effect, that if a creditor whose claim is ripe for action sleeps at all upon his rights, the debtor may discharge his obligation by paying the money to some other person who, having opportunity, asserts his authority to receive it. The existence of statutes for the limitation of actions refutes this proposition. If its soundness had been established at an early period in legal history, the necessity for such statutes would have been largely diminished, inasmuch as the fact in human experience which calls for a statute of repose is that many persons do, for some reason or no reason, refrain, for longer or shorter periods, from prosecuting matured claims. The law permits this, but within such limits as shall preserve the rights of parties defendant as against the loss of evidence and other untoward consequences of delay. The preservation of such rights does not, however, involve liberty of payment of debts to persons destitute of authority to receive them.

*Fourth.* The direction of a verdict for the plaintiff was not erroneous. What was said on this point in the case of Belcher against the same defendant association is pertinent here.

The judgment of the Passaic Circuit Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    15.

*For reversal*—None.