WILLIAM NICHOLAS v. ROBERT F. ORAM.

Submitted June 5, 1908—Decided November 5, 1908.

1. To hold one liable as master for injury to another claiming to have been his servant, the relation of master and servant must be shown to have existed.
2. If the employment is claimed to have been effected through an intermediary, the authority of such intermediary as representing the master should appear, and cannot be inferred from evidence of his own statements.

On rule to show cause.

Before Justices GARRISON, SWAYZE and PARKER.

For the plaintiff, *William C. Gebhardt.*

For the defendant, *James H. Neighbour* and *Paul A. Queen.*

The opinion of the court was delivered by

PARKER, J. This suit is to recover damages for personal injuries sustained by the plaintiff because of the giving way of a scaffold on which he was working. The scaffold was on the roof of a house under construction belonging to one Keenan, and plaintiff at the time of the accident was engaged

as helper, carrying slate up a ladder and depositing it on the scaffold for use by the slater. The declaration alleges in the first count that defendant was a builder, and employed plaintiff to work on the scaffold in question, and that defendant failed to take proper care to have the scaffold safe for such purpose, so that it broke and injured plaintiff. The second count is rested on an alleged procurement and invitation of plaintiff by defendant to work on a scaffold that was unsafe and as to which defendant had not exercised legal care. The case was submitted to the jury, who returned a verdict for plaintiff, and the matter is before us on a rule to show cause why the verdict should not be set aside and a new trial granted.

Of the several grounds that are urged in support of the rule, we think one is sufficient to dispose of the case as presented. In our judgment the plaintiff failed to make due proof of the fundamental fact either of his employment by defendant, or other invitation on the part of the defendant to work at the house in question. He, plaintiff, was not regularly in the employ of Oram, and never saw him nor had any communication with him either before the accident or afterwards in connection with this work. Plaintiff was regularly employed, if at all, by a slate roofing contractor named Searing, and was actually working for him on the day before the accident. On that day, Searing testifies, defendant Oram asked him to let him have a man or two to help him out with his contract for the Keenan house, and Searing told Oram that he could not spare any men because of a job that he was to begin on the next day, and that Oram went away apparently angry; that very shortly afterwards Searing heard that his engagement for the next day was off because the building was not ready for him. He did not, however, communicate with Mr. Oram, and did not see him until after the accident, but that on that day, while Searing was at supper, a man named Eckhardt came to him and said that Mr. Oram wanted him to send his men up the next day, and so the next morning Searing told them, including plaintiff, that "there was a job to be done, if they wished to do it they could;" and plaintiff, relying on this remark of Searing's, went that morning to

the Keenan house, and was working there when injured. It also appeared by Searing's testimony that after the accident he went up and examined the broken scaffold, and on his way from thence met the defendant, who asked if the men would come back, and on being told they would not, said they would get no pay for what they had done if they did not come back.

This is substantially everything in the case to connect Oram with the fact of plaintiff's going to the Keenan house to work. Eckhardt was not called by plaintiff, and when sworn for defendant denied that Oram had given him any directions to go and see Searing, or that he had in fact seen him about getting any men to work. It is apparent that when Oram left Searing in dudgeon because he could not have the men, there was absolutely nothing by way of employment or invitation between Oram and the plaintiff. All that occurred after that was the alleged visit of Eckhardt, who, according to Searing's testimony, undertook to act as agent or messenger for Oram, to ask for the men once more. But there is nothing except Eckhardt's statement on that occasion to show that Oram had sent him, or that Oram even knew that the men would be available; and that statement was, of course, pure hearsay, and incompetent to bind Oram unless it appeared in some legal way that Oram had authorized him to make it. *Ryle* v. *Manchester Building and Loan Association,* 45 *Vroom* 840.

Nor does the interview of Searing with Oram after the accident help the case. It is evidence to show that Oram had heard the men had gone to work on the house and that he was willing to pay them if they would go on, but it is without evidential force to show that Oram had any such prior knowledge of their intended going as to charge him with any duty of care in providing a safe place for them to work.

Motion was made to nonsuit, on the ground, among others, that the evidence had not properly connected Oram with the plaintiff's going to work at the house in question. This motion should have been granted. The rule to show cause will be made absolute.