ARTHUR G. HEMMERLE *vs.* EDWARD B. ALDRICH.
MARTHA HEMMERLE *vs.* SAME.

MAY 22, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. The latter of these two cases was an action of trespass on the case, brought to recover for injuries suffered by the plaintiff, while she was walking across Broad street in the city of Cranston, by being hit by an automobile operated by the defendant. She alleged in her declaration that she was at the time in the exercise of due care and that her injuries were caused by the defendant's negligent operation of the automobile. The former case was a similar action brought by her husband to recover for damages suffered by him as a result of these injuries to her.

At the conclusion of the evidence for the plaintiffs, when the two cases were being tried together in the superior court before a jury, the defendant first moved for a nonsuit in each case and, when that was denied, moved for the direction of a verdict for the defendant. This motion was in each case granted by the trial justice and a verdict directed accordingly, on the sole ground that on the evidence the wife was clearly guilty of contributory negligence as a matter of law.

Each case is now before us solely on the plaintiff's exception to such direction. As the question now involved in each case is exactly the same, we shall discuss only the case of the wife, whom we shall refer to as the plaintiff. As the defendant put in no evidence, and as there was nothing that was clearly incredible in the testimony of the plaintiff and the supporting testimony of her witnesses, we must, for the purpose of ruling upon the direction of a verdict for the defendant, assume that all such testimony was true.

At the place of the accident and for a long distance north and south of it, Broad street is straight and runs in a generally northerly and southerly direction. At the place of the accident there is a sidewalk on each side and the distance between the two curbs is 45 feet. On the west side of the street there are two trolley car tracks, the westerly one being for southbound street cars, and the easterly one for northbound street cars. The westerly rail of the westerly track is 6.67 feet from the curb; the space between the rails is 4.71 feet; the space between the two tracks is 4 feet 11 inches; and the width of the easterly track is 4.71 feet. The easternmost rail then is 21 feet from the westerly curb and the space between that rail and the curb on the easterly side of the street is 24 feet. The tracks and the space between them are used for general vehicular traffic, so far as consistent with the movements of the trolley cars.

The plaintiff lived in a house at the north corner of

Broad street and a short street named "Talbot Manor," which enters Broad street on the east side of the latter street, but does not cross it. The next street to the south is Wentworth avenue, about 290 feet from Talbot Manor. The nearest street to the north that enters Broad street from the east is Armington street, the northerly line of which is 248 feet northerly from the northerly line of Talbot Manor. For a much longer distance there is no street entering Broad street from the west, most of the space being occupied by a cemetery.

At about 11:45 p. m. the plaintiff alighted from an automobile on the westerly sidewalk on Broad street, nearly opposite her home, and the automobile was then driven on to the south. The weather was clear and there was an incandescent street light at the southerly corner of Talbot Manor and Broad street. There were also two arc lights on the westerly side of the latter street, one being at Wentworth avenue and the other about 197 feet north of where the plaintiff alighted. All of these were functioning properly.

She waited a few moments for several automobiles coming from the north to pass by and then looked to her left, that is, to the north on Broad street, and saw a line of automobiles coming from that direction along the westerly car track and near the westerly curb, the nearest one being at Arlington street and thus about 248 feet away from her, with its headlights on and not going very fast. Then, having assured herself that she had time to get across ahead of the automobiles, she left the curb and walked rapidly towards her home on the opposite side of the stret. She did not look again to her left, as she saw some automobiles coming from the south near Wentworth avenue, which would naturally proceed north along the easterly side of Broad street, and she wished to keep them under observation.

When she had reached a point which was at least to the

east of the middle line of the street and which she testified was about the middle of the space between the easternmost rail of the car tracks and the curb on the east side of the street, she was struck and badly injured by the defendant's automobile, which was the one that she had seen at the head of the line coming from the north and which had come upon her without any warning of its approach being given and without her being aware of its proximity.

One of her witnesses testified that at the time of the accident he was driving south on Broad street in an automobile, which was the second one behind that of the defendant from Arlington street to the place of the accident; that his own automobile was traveling along the space between the two car tracks, when they approached the place of the accident; that the defendant's automobile, about 150 to 200 feet ahead of his own, was then traveling on the easterly track; that it suddenly made a sharp left turn and came to a stop with its front end only two or three feet from the curb and its rear end projecting out into the street; and that the plaintiff was then picked up, to the right of the defendant's automobile and four or five feet east of the most easterly car rail.

Another witness testified that at a point about 450 feet north of the place of the accident his automobile was passed by the defendant's, which was then going at an estimated speed of twenty-five miles per hour.

On this evidence the trial justice ruled that the plaintiff was guilty of contributory negligence as a matter of law, not because she started to cross the street, knowing that the automobile which finally hit her was coming south, at what she judged to be a moderate speed, from a point that was 248 feet away, but because she did not again look at it, while she was rapidly walking across the street. It is our opinion, however, that on this evidence there was a question of contributory negligence by her which the jury could reasonably decide either way.

The trial justice, in announcing his decision, said that this court had laid down "a pretty hard and fast rule, a person who walks into a highway, knowing of the approach of an automobile, and attempts to cross the path of that automobile, must not continuously look, but must reasonably observe, from time to time, the conditions as they are continuously changing." He also said that in *Kalify* v. *Udin*, 52 R. I. 191, 159 A. 644, this court apparently decided that the doctrine of last clear chance does not apply in such a case as this.

We do not find that this court has decided either that a person who has started to cross a street, right after observing an automobile at a considerable distance and coming from his left at a moderate speed, is *necessarily* guilty of contributory negligence, if he moves rapidly toward the other side of the street without again looking toward the approaching automobile, especially when there are other automobiles approaching from a considerable distance to his right, on the other side of the street; or that it has ever held that in such a case the doctrine of the last clear chance cannot be applied.

In the *Udin* case the deceased, for whose death, alleged to have been caused by the defendant's negligent operation of an automobile, the action was brought, was a women sixty-eight or sixty-nine years old, who at night started to cross a main highway in the country, after looking only to her left. She passed just in front of an automobile which she had seen approaching from her left, and was then fatally injured by contact with the left front mudguard of an automobile coming from her right.

There was no evidence that she ever looked in that direction. The majority of the court held that she was guilty of contributory negligence as a matter of law, such negligence being found, not from any failure by her to look again to her left after starting across, but from her failure to look to her right before starting across and the absence

of evidence that she *ever* looked to her right, the direction from which in fact an automobile was then rapidly approaching that she would have seen, if she had looked in that direction.

As apparently she could have avoided the accident by the exercise of reasonable care even a moment before the collision, and as there was no evidence that the defendant ever discovered her peril or even would in the exercise of reasonable care on his part have discovered it in time to avoid the collision, there was no basis for the application of the doctrine of the last clear chance. The vital differences between that case and the one now before us are too obvious to require further discussion of them by us.

The defendant in this case relies most strongly on the opinion of this court in *McKean* v. *Barker,* 148 A. 599, in which the plaintiff, while crossing Pine street in the city of Providence, was injured by either running into, or being hit by, an automobile operated by the defendant. Before starting to cross she had looked to her left and had seen this automobile coming from that direction, on the other side of the street. She thought she had time to cross in safety and started and continued to walk across, without giving any further attention to the defendant''s car or any other traffic on the street. When she reached the center of the street, she was injured by the front part of the right mudguard of the defendant's car. The defendant made a very quick stop and this court found that he was clearly not negligent.

A directed verdict for the defendant was sustained by this court, which said: "The plaintiff before leaving the sidewalk knew that defendant's car was approaching on the other side of the street. Without paying any further attention, either to the defendant or to any other traffic on the street, she proceeded to cross the street. In the circumstances, this was clearly contributory negligence on her part. Plaintiff left a place of safety on the sidewalk

and, without attempting to protect herself by using her eyes, walked blindly across the street, and either ran into defendant's car or was struck by it. She was responsible for her own injury."

That case is, however, easily distinguished from this one. There the street was a narrow one, as this court pointed out. The record shows, though this is not mentioned in the opinion, that this was a one-way street, so that there was no traffic coming from the plaintiff's right and requiring attention from her, as there was in the instant case. But the most important distinctions are that in that case, when the plaintiff started to cross the street, there were trucks parked on her side of the street and close by on her left, and yet she did not look again to her left, when she walked out from their shelter and the defendant's car must have been quite near.

Evidently, in that case, this court, as well as the trial justice, was, by the evidence, clearly convinced that when the plaintiff thus walked out from behind these trucks and to the middle of the street, without looking at the automobile after leaving the sidewalk, the defendant's moving automobile was so near her that she was clearly guilty of contributory negligence in thus acting. There was no evidence that, after she started across, the defendant, by the exercise of reasonable care, could have avoided the accident.

In the instant case, however, when the plaintiff started to cross, the defendant's automobile was 248 feet away and apparently moving at a moderate speed near the west side of the street; there was nothing to interfere with his seeing the plaintiff as soon as she got into the street; and the jury, from the evidence, could reasonably have found that an ordinary prudent pedestrian in her position might fairly assume that the operator of that automobile would exercise reasonable care to perceive such pedestrian and to avoid a collision; and would move at reasonable speed, keep near the west side of the street, give warning of any danger

of collision and permit such pedestrian to cross in safety. In our opinion also, under these circumstances and the further circumstance that the plaintiff knew that automobiles were approaching from the south along the further side of the street, the jury could reasonably have found that she acted with reasonable care for her safety in confining her vision to the street in front of her and to these automobiles on her right.

Moreover, in this case, we have the further evidence that the defendant, after the plaintiff saw his automobile, drove much farther over near the middle of the street, and finally made a sudden sharp and unexplained turn to the left and struck her with the right side of his automobile, when she had passed beyond the center line of the street.

Aside from these last features of this case, it much more clearly resembles, in the facts and questions involved, the cases of *Benoit* v. *Miller,* 67 A. 87, (1907), *Humes* v. *Schaller,* 39 R. I. 519 (1916), *Russell* v. *Vergason,* 95 Conn. 431, 111 A. 625, (1920), and *Gauthier* v. *Quick,* 250 Mass. 258, 145 N. E. 436, (1924), than it does the cases cited for the defendant.

In *Benoit* v. *Miller, supra,* the first part of the opinion and all that bears upon the main question in the instant case is as follows: "The evidence of the plaintiff's witnesses is to the effect that when the automobile coming southerly on the street, was 72 feet away, the plaintiff's intestate, who was walking slowly in an easterly direction, had crossed beyond the middle of the street; that at that point the plaintiff's intestate looked back toward the sidewalk he had left and was immediately struck by the left lamp of the automobile. If this testimony is true, the intestate had reached a point where he had a right to suppose that the automobile would avoid him by turning to the right, or if it were going at a lawful speed, in the direction it was pursuing would pass behind him. In such circumstances contributory negligence can not be attributed to the intestate, even if we

require of him the same degree of care as of a grown person."

In *Humes* v. *Schaller, supra,* the plaintiff, while standing at noonday on a country highway and examining the wheel of a motor truck, in which he had been riding, and with ten feet of the roadway between him and the sidewalk and with nothing to prevent him, for at least 350 feet, from seeing, and being seen by, anyone approaching in the roadway, was hit by an automobile operated by the defendant's servant in the course of his employment. The court held that the plaintiff was not guilty of negligence as a matter of law, although, after looking up and down the highway, he remained in the above position for a considerable interval without again looking up or down the highway.

At page 521, the court says: "But it is clear that the law does not require one lawfully standing at noonday on a country highway and directing his attention to a burst or punctured tire on a wheel of a vehicle on which he has been riding to anticipate and to guard against being run over by an automobile having ample room to pass him in safety. In other words, the law does not require an ordinarily prudent person to expect such carelessness. On the contrary, he has a right to expect and to rely on the expectation that the driver of the automobile will avail himself of the opportunity to pass by in safety."

In *Russell* v. *Vergason, supra,* there was a paved highway, running about north and south, with trolley-car tracks just to the east of it. The plaintiff, coming from the east, looked to the north, when she came to the first trolley track, and saw no vehicle approaching from that direction. Then she proceeded across the car tracks and entered upon and continued to walk across the paved part of the highway. Before she got across, she was hit by the defendant's automobile, coming from the north at a speed of about twenty to twenty-five miles per hour.

She testified that she did not look again to the north

after she entered the space covered by the trolley tracks; but the defendant and his wife, who were in his automobile, both testified that the plaintiff looked in that direction, just as she entered the paved section, and must have seen the automobile, but that she did not look again. The reviewing court calculated that the automobile was about 160 feet away, when she entered the paved section. On this evidence it held that she was not, as a matter of law, guilty of contributory negligence, and it sustained a verdict in her favor, notwithstanding that the lower court had ordered a new trial.

At page 435, (627 of 111A.), the court says, with reference to the plaintiff: "May she not have anticipated, reasonably, that her equal right to the use of the highway at this point and for the purpose of crossing it would be respected by the automobilist to the extent of slackening his speed so that she could pass in safety? May she not have crossed without being held negligent for not anticipating that the defendant would drive on without reducing his speed, and along that part of the surfaced highway nearest the curb? May she not have reasonably anticipated that the approaching automobile would keep in the center of the surfaced highway, and away from contact with her as she passed beyond the center of this way? These were all considerations for the jury, and they might have resolved them in favor of the plaintiff."

In *Gauthier* v. *Quick, supra,* the street which the plaintiff wished to cross ran north and south in two lanes, each thirty feet wide and separated by a grassy strip with a curb on each side of it. Just before she, coming from the west, entered the west lane, which was the one for southbound vehicles, she looked to the north and saw the defendant's automobile coming south in the middle of that lane and 150 to 200 feet away. She decided that she had plenty of time to cross and went ahead, walking "pretty fast." When she was almost across to the grassy strip, apparently with-

out having looked again to the north, she was hit by the automobile.

A verdict for her was sustained, the court, at page 260, (437 of 145 N. E.), saying, as to the jury: "They could find that the plaintiff's belief that she could cross the street in safety was reasonable. . . . Both she and the defendant had reciprocal rights and duties as travellers. . . . In deciding to cross the street she had the right to take into consideration the duty which the defendant owed her, as a pedestrian, to slow down and give a timely signal. . . . She was not bound to anticipate an unreasonable and unlawful rate of speed. She had the right to rely, to some extent, on the expectation that the defendant's automobile would not run into her when she was almost at the curb and there was ample room for it to pass without striking her."

We are convinced that those cases lay down the correct rule to be applied in the instant case, and that under it the plaintiff who suffered injury was not guilty of contributory negligence as a matter of law. This conclusion makes it unnecessary for us to consider the question of the applicability of the doctrine of the last clear chance.

The plaintiff's exception in each case is sustained, and each case is remitted to the superior court for a new trial.

*Cooney & Cooney,* for plaintiffs.

*Sherwood & Clifford, Raymond E. Jordan,* for defendant.