# Felix W. Chagnon *vs.* United Electric Railways Company

JULY 12, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.    This is an action of the case to recover for injuries which were received by the plaintiff in being struck by a trolley car of the defendant, while he was walking across Westminster street in the city of Providence, and which he alleges were caused by the negligent operation of the car. At the close of the evidence for him at a jury trial in the superior court a nonsuit was entered on the motion of the defendant and the case is now before us on one exception only, taken by him to the decision of the trial justice granting this motion.

His own testimony and that of other witnesses showed the following facts. The accident occurred on Friday, December 11, 1936, at about 5:45 p. m.  At that time he was about sixty-nine years old, in good health and vigor for a man of that age, and in possession of all his faculties.  A few minutes before the accident occurred he walked in a westerly direction along the sidewalk on the south side of Westminster street until he reached a point which was just about opposite the middle of Hood street, where it comes into Westminster street from the north, at right angles.  Then he proceeded to the curb, stopped there, facing to the north, and looked first to his left and then to his right, preparatory to starting to cross the street to get to a restaurant at the west corner of Westminster and Hood streets, where he planned to have his supper.  When he looked to the east, he saw the trolley car which afterwards ran into him and which was being operated and controlled by a servant of the defendant. When the plaintiff then saw it, it was standing at a white pole located on the north sidewalk of Westminster street about 240 feet east of the position of the plaintiff.  The car was on the more northerly of the two tracks and was bound in a westerly direction.

Westminster street at and near the scene of the accident was 40 feet wide between curbs.  Each of the tracks was 4.72 feet wide between the rails; and the space between the tracks was 4.84 feet.  The distance from the southerly or

eastbound track to the nearer curb was 12.69 feet and from the northerly track to the north curb just a trifle more. In the open space between the tracks, a little north of the center line of that space and about two or three feet west of the projection southerly of the westerly line of Hood street, was a sewer cover.

The street was then dark, except as illuminated by the lights from the show windows of stores, which occupied nearly all the space on the north side of the street, and by the street lights, of which one was located, on the north side, about 52 feet east of the sewer cover. There was a drizzling rain and the wind was blowing from the north.

After looking to the west and then to the east, as above stated, the plaintiff waited a few moments until one or two automobiles went by, going east. Then he looked both west and east again, saw the trolley car still stopped at the same place as before and then, the way being clear, he left the curb and started to walk across the street, bearing a little to his left toward the entrance to the restaurant. He walked at his usual speed, which was a rather slow walking speed. He got to the sewer cover and stopped there just momentarily, while he looked to his left and then to his right. He saw the trolley car at Whittaker street, the center of which, according to an engineer's plat in evidence, was just about 105 feet east of the sewer cover.

He then started to cross the rest of the street, still bearing a little toward the west, toward the restaurant. As he did so, he looked again to the east and saw the trolley car in front of a cafe, which was at the west corner of Whittaker and Westminster streets. According to his testimony and the plat, the jury could have reasonably estimated that the distance of the front of the car from the plaintiff, as he stepped across the south rail of the track on which the car was coming toward him was 80 feet. He testified that the car was coming "pretty fast".

As above stated, the distance between the two rails of that track was 4.72 feet; and he testified that he kept on walking across it at his usual walking speed. A nearby witness, who was observing him from the north sidewalk, testified that he increased his speed, as he crossed the track. Just as he was stepping over the north rail, he heard a rushing sound and put up his hand; but the car struck him and knocked him down, without any bell having been sounded or other warning given to him; and the right wheel of the car ran over him.

A witness who was standing at the time of the accident on the north side of Westminster street, a little east of Hood street, testified that as the plaintiff started across the north track, the car was just west of Whittaker street, in front of the barroom or cafe there, which would make its distance from the plaintiff about 80 feet. He estimated its speed at that time as 15 to 18 miles per hour and said that its speed was not slowed down at all before it struck the plaintiff. Other witnesses, who were on the sidewalk near the place of the accident, corroborated this testimony.

A passenger, who was on the car at the time, testified that the front vestibule was crowded with passengers; that on account of the weather conditions outside, and the fact that no windshield wiper was working, the front windows of the car, including the one in front of the motorman, could not be easily or clearly seen through, being "quite misted up"; that he noticed no slackening of the speed of the car until after it struck the plaintiff; and that he thought the motorman shouted just before the car struck the plaintiff.

It is clear to our minds that there was evidence to go to the jury in proof of negligence on the part of the defendant's motorman in charge of its car, in that he failed to see the plaintiff, as he walked across the track from one side to the other, and to check the speed of the car sufficiently to enable the plaintiff to cross in safety or to give him timely warning of his danger. The remaining question is whether there was

evidence for the jury that the plaintiff was not guilty of contributory negligence.

On that question this case differs radically in several respects from the typical case in which the plaintiff has left a sidewalk or safety zone or other place of safety and has proceeded into a street in the path of a nearby, rapidly-approaching vehicle, without looking in the direction from which it was approaching, and has been struck by it before he had proceeded any very considerable distance into the street. In cases of that sort nonsuits or directed verdicts for the defendants have often been sustained on the ground of contributory negligence as a matter of law. Many such cases are cited in the defendant's brief in the instant case.

One important difference between such a case and the instant case is that the present plaintiff, just before he started across the trolley car track, on which the defendant's car was approaching, was not in a place of safety, but in the middle of a main city street, in which automobile traffic was heavy; and he had no protection from such traffic except the care which automobile drivers might take for his safety. Yet he had just as much right in the street as they had, or as the operator of the defendant's car had. That he was in such a place of danger, from which he could escape only by moving to one side of the street or the other, is a material fact to be considered in deciding whether or not he was guilty of negligence as a matter of law in trying, as he did, to walk across the track.

Another important difference between the typical case above described, in which a nonsuit or directed verdict for the defendant has been sustained, and the instant case is that the present plaintiff did not start across the track until he had looked for and seen the defendant's car, had an opportunity to estimate its distance away and its speed, and had evidently decided that he had time enough to cross the track in safety by walking at his usual speed.

A third important difference is that in the instant case, according to evidence in favor of the plaintiff, he was not struck until he was on the point of getting to a place where he could not be hit by the car, and that there was evidence on which, and on inferences fairly deducible from which, the jury could, in our judgment, have reasonably found that if the motorman of the car had exercised ordinary care for the safety of pedestrians who might be crossing the track in front of the car, he would have seen the plaintiff soon enough, and checked the speed of the car soon enough and rapidly enough, to avoid hitting the plaintiff.

Therefore, in our judgment, the rule of law is applicable in this case that a pedestrian, in deciding whether or not to walk across a street or any portion of it, in front of an approaching vehicle, which is not so close and moving at such speed as to make a collision unavoidable if the pedestrian does so walk across, has a right to rely, to some extent at least, on the expectation that the driver of the vehicle will use reasonable care to avoid such a collision. *Russell* v. *Vergason,* 95 Conn. 431, 111 A. 625; *Gauthier* v. *Quick,* 250 Mass. 258, 145 N. E. 436; *Fox* v. *Great Atlantic & Pacific Tea Co.,* 84 N. J. Law 726, 87 A. 339; *Hemmerle* v. *Aldrich,* 58 R. I. 227, 192 A. 166; 1 Thompson on Negligence, §§ 191, 1327.

In the first of these cases the plaintiff entered the easterly side of the paved section of a road, in order to cross it, after crossing trolley tracks which were along that side of the road. The defendant's automobile was then about 160 feet away, coming from the north; and it struck her before she got across. At 95 Conn. 435, 111 A. 627, the court says, with reference to the plaintiff: "May she not have anticipated, reasonably, that her equal right to the use of the highway at this point would be respected by the automobilist to the extent of slackening speed so that she could pass in safety."

In *Gauthier* v. *Quick, supra,* a pedestrian, crossing a street, was struck by the defendant's automobile coming from her

right. When she left the curb, she saw it 150 to 200 feet away, "coming pretty fast", as she testified; and she apparently did not look towards it again. The court sustained a verdict for her by the jury, saying at 250 Mass. 260, 145 N. E. 437: "They could find that the plaintiff's belief that she could cross the street in safety was reasonable .... Both she and the defendant had reciprocal rights and duties as travelers. ... In deciding to cross the street, she had the right to take into consideration the duty which the defendant owed her, as a pedestrian, to slow down and give a timely signal."

*Hemmerle* v. *Aldrich, supra,* was a similar case and this court, at page (169), said, as to the defendant: " . . . there was nothing to interfere with his seeing the plaintiff as soon as she got into the street; and the jury, from the evidence, could reasonably have found that an ordinary prudent pedestrian in her position might fairly assume that the operator of that automobile would exercise reasonable care to perceive such pedestrian and avoid a collision; . . . ."

In all the cases which we have cited a pedestrian was struck by an automobile, but we can see no reason why the same reasoning and rule should not apply when, under like circumstances, a pedestrian is struck by a trolley car.

By reason of the differences which we have stated, we are of the opinion that the instant case is not governed by the same legal reasoning and rule which have governed the typical case above described, in which a nonsuit or directed verdict for the defendant has been sustained on the ground of contributory negligence as a matter of law. Our opinion is that on the evidence introduced by the plaintiff in the instant case he was not guilty of contributory negligence as a matter of law and that therefore the trial justice erred in granting the defendant's motion for a nonsuit.

The plaintiff's exception is sustained, and the case is remitted to the superior court for a new trial.

*Walter I. Sundlun, Baker & Spicer,* for plaintiff.

*Clifford Whipple, Earl A. Sweeney,* for defendant.