SOPHIE SOKOLOSKI *vs.* MICHAEL FRANCIS BREEN, *d. b. a.*

ALBERT SOKOLOSKI *vs.* SAME.

JULY 5, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. These are actions of the case brought by Sophie Sokoloski and her husband to recover their respective damages by reason of personal injuries received by her, while in the exercise of due care, in being knocked down by a taxi-

cab which they allege was then being negligently operated by the defendant's employee in the course of his employment.

At a jury trial of the two cases together in the superior court, a motion for nonsuits, made by the defendant's attorney at the close of the evidence for the plaintiffs, was granted on the sole ground that there was no evidence that the defendant's employee was negligent; and nonsuits were entered accordingly. The cases are now before us on bills of exceptions by the plaintiffs based only on these rulings. As both exceptions raise exactly the same question, we shall discuss only the case of the wife, who will be referred to as the plaintiff.

The evidence showed, and the defendant does not deny, that the plaintiff, while she was standing in Dexter street in the city of Pawtucket, was struck and knocked down by the defendant's taxicab while it was being operated by a man by the name of Burns, in the course of his employment by the defendant. The decisive questions are whether there was evidence for the jury that the collision was caused by negligence by Burns and that negligence on the part of plaintiff was no part of its proximate cause.

The accident occurred a little after five o'clock in the afternoon of Saturday, December 12, 1936, a little to the south of the intersection of Dexter street, which runs about north and south, and Goff avenue, which runs about east and west. The vicinity was then well lighted. It was raining a little, but there is nothing to indicate that there was any lack of visibility. Where the accident occurred, Dexter street was 38 feet wide from curb to curb. Westerly from the intersection Goff avenue, from curb to curb, was a little over 88 feet wide; and easterly from the intersection it was a little under 60 feet wide, the south line of the street there being 29 feet further north than the south line of that part of the same street to the west of the intersection.

In Dexter street from the intersection southerly was a trolley car track 4.71 feet wide, which was in the center of the street, except that at the point where the plaintiff, according to her testimony, stood when she was hit, the track was a trifle farther to the west. She had walked easterly along the south sidewalk of Goff avenue, approaching the intersection. When she reached Dexter street, she turned toward her right and reached a point on the west curb of that street about six feet south of the corner.

There she saw that there was considerable traffic moving on Dexter street and she therefore waited at the curb until that stopped and the traffic on Goff avenue started to move. This was heavy and there was much tooting of horns. Dexter street was then clear in the vicinity and she started across that street, bearing a little to her right. When she got about the center of the street, she saw two cars, one after the other, approach on the east side of Dexter street, from the south.

So when she reached the east rail of the car track, where she must have been just about two feet east of the center of the street, she stopped to let these two cars go by, so that she could safely resume her walk across. She looked to her right at these cars and did not look to her left toward Goff avenue, and had not looked in that direction since she left the curb. As she stood thus, just about two feet east of the center of the street, she was struck on her left side and knocked down by a taxicab, which she had not seen nor heard, and was so badly injured that she was taken by the driver of the taxicab to a hospital, where she stayed nearly two days.

Burns's brief account of the accident was presented, as a part of the plaintiff's case, by reading into the evidence a report which he had made at the police station somewhere about three-quarters of an hour after the accident, and which had been signed by him after it had been typewritten. In this he stated that at the time of the accident the street was

wet and slippery and the traffic heavy; that he was driving west on Goff avenue and made a left turn to the south on Dexter street and was proceeding very slowly, on account of the heavy traffic at that point; that when he had about completed the left turn, he suddenly saw a woman directly in front of his taxicab; that she appeared so suddenly that he was unable to avoid striking her; that the left front headlight of the taxicab struck her, knocking her to the ground; and that he took her in his taxicab to the hospital, where she was treated for an injury to her back.

We are of the opinion that there was evidence from which the jury could reasonably find that Burns, as charged in the first count of the declaration, was negligent in failing, while turning into Dexter street, to maintain a lookout for pedestrians lawfully crossing the highway, and that as a result of such negligence, he drove the taxicab against the plaintiff. We are also of the opinion that there was evidence from which the jury could reasonably find that Burns, as charged in the fourth count of the declaration, was negligent in failing, as he turned to the left from Goff avenue into Dexter street, to pass to the right of the intersection of the middle lines of those streets and that the result of such negligence was that he drove the taxicab against the plaintiff.

In this connection it should be kept in mind that, according to her testimony, the plaintiff, when hit, was standing just about two feet east of the center line of Dexter street and must have been about 10 feet south of the extension easterly of that part of the south line of Goff avenue which was west of the intersection; and she must have been about 38 feet southerly of the extension of the south line of that portion of Goff avenue which was east of the intersection, the direction from which the taxicab had entered it.

It should also be kept in mind that, according to her testimony, she must have been standing at that point quite an

appreciable interval of time, because she had stopped there to watch two cars go by on their way north, intending to resume her walk across the street, as soon as they had passed in front of her. Yet, according to Burns's testimony, he did not see her until it was too late for him to avoid hitting her, though he was going very slowly; and the left front headlight of the taxicab struck her so violently that she was knocked down and became unconscious and suffered serious injuries.

We are also of the opinion that, on the evidence introduced, the plaintiff was not guilty of contributory negligence *per se*. The evidence indicated that before she left the sidewalk to walk across the street, she looked both to her right and to her left, and that she did not start across until the time came when there was no automobile approaching from her right or left, the traffic on Dexter street having ceased to move into the intersection and heavy traffic on Goff avenue having started to move through the intersection.

Apparently, according to the evidence, the situation remained the same until she arrived at the center of the street, when she saw two cars, one after the other, approaching from her right on Dexter street; and she therefore stopped after going two feet, or a little more, to the east of the center line of the street. She kept looking exclusively to her right, the direction from which danger to her was very much more to be feared than from her left.

In our opinion it was a question for the jury, on the evidence before them, whether or not the ordinary prudent person in the plaintiff's situation at that time would have turned her eyes to her left, in order to see if any car was approaching from that direction and was in such a position as to constitute a danger to her, standing as she was, stationary two feet or so to the east of the middle line of the street. The trial justice was in accord with this conclusion.

Both conclusions by us we believe to be in accordance with recent opinions of this court, which themselves are in accordance with earlier cases cited therein. *Hemmerle* v. *Aldrich,* 58 R. I. 227, 192 A. 166; *Keough* v. *Duggan,* 59 R. I. 496, 196 A. 398; *Dwinell* v. *Oakley,* 61 R. I. 88, 200 A. 445; *Salerno* v. *Sheern,* 62 R. I. 121, 3 A. 2d. 657; *Gilfoil* v. *Fishbein,* 62 R. I. 277, 5 A. 2d. 232.

The defendant seems to rely greatly on *Gardiner* v. *Romano,* 54 R. I. 348, 173 A. 84, in which a directed verdict for the defendant was sustained. But there the plaintiff was struck by a motor car moving north on the east half of a north and south street, while she was walking easterly across that half of the street, without looking to her right, though she had noticed, a little before she started to cross there, that the traffic light, at an intersection a short distance to the south, was clear for northbound travel. It was dark where she was and she wore a dark dress. The distinctions between that case and this are obvious.

From the above conclusions we find that the nonsuits were erroneous. In each of these cases the plaintiff's exception is sustained and each case is remitted to the superior court for a new trial.

*Woolley, Blais & Quinn,* for plaintiffs.

*Quinn & Quinn, James B. Linehan,* for defendant.

