## HENRY D. LAW v. WOOLMAN STOKES.

1. A salesman authorized to make sales, and selling on credit, is not authorized subsequently to collect the price in the name of his principal, and a payment to him will not discharge the purchaser, unless he can show some authority in the agent to collect, beyond that necessarily implied in a mere power to make sales.

2. A principal is bound by the acts of his agent, within the authority he has actually given him, which includes not only the precise act expressly authorized to be done, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that he is liable for the acts of the agent, within the appearance of authority he knowingly permits the agent to assume, or holds the agent out to the public as having.

3. When the authority of the agent is shown, it cannot be qualified by the secret instructions of the principal, or enlarged by the unauthorized representations of the agent.

4. A bill of goods sent by a merchant to his customer, in the heading of which was printed a notice that " all remittances on account, or in settlement of bills, must be made direct to the principal ; salesmen not authorized to collect," and received by the customer, and shown to have been in the hands of his clerk, who ticked off the goods on the bill, is notice that the agent has no authority to collect, notwithstanding the clerk failed to see the printed notice in the bill head.

This cause was tried at the Essex Circuit, at the term of September, 1866, and a verdict rendered for the defendant. On the coming in of the *postea*, the plaintiff moved to set aside the verdict, and for a new trial.

Argued before the CHIEF JUSTICE, and Justices BEDLE, DALRIMPLE, and DEPUE, at February Term, 1867.

For the plaintiff, *W. S. Whitehead.*

For the defendant, *Thomas N. McCarter.*

The opinion of the court was delivered by

DEPUE, J. The plaintiff brought this action to recover the amount of a bill of goods, sold by him to the defendant. The sale and delivery of the goods were not denied, and the only question in controversy at the trial was whether the defendant had paid for them.

The plaintiff, at the time of the transaction, was an importer of earthenware, doing business in the city of New York, and the defendant the keeper of a hotel at Long Branch, in this state.

On the fifth of July, 1865, the defendant purchased, at the store of the plaintiff, in New York, of one J. B. Sheriden, a bill of earthenware, amounting to the sum of three hundred and twenty dollars and thirty-seven cents. It appears from the evidence in the cause, that Sheriden was employed by the plaintiff to sell goods for him, without any salary, for a commission on his sales. The goods in question were sold on a credit, and were to be paid for on the first day of the next August. The goods were shipped to the defendant on the sixth day of July, 1865, and on the same day the plaintiff wrote the defendant a letter, of which the following is a copy :

" *Mr. W. Stokes, Long Branch :*

" DEAR SIR—I beg to hand you bill of ware purchased by you, and duly forwarded as per direction. I trust you will find all satisfactory. Please remit amount *direct to me.*

" $320.37. Yours, truly,

" HENRY D. LAW.

" August 1, 1865."

Enclosed with the letter was a bill of the goods, in the name of Henry D. Law, as vendor, in the heading of which was printed plainly and conspicuously, in red letters, " all

remittances on account, or in settlement of bills, must be made direct to the principal; salesmen not authorized to collect." On the sixteenth of August, 1865, the defendant paid Sheriden for the goods, at the defendant's hotel, at Long Branch, and took from him a receipt for the same, signed, "J. B. Sheriden, for Henry D. Law." Sheriden never paid the money to the plaintiff, and has left the country.

The fact of this payment to Sheriden is not disputed, but the plaintiff insists that Sheriden had no authority to collect the money, and, therefore, the payment to him is no discharge.

Sheriden was a mere salesman for a commission. As such he had authority to sell goods on credit, but not to discharge purchasers from debts incurred by them in purchasing goods through him, of the plaintiff. An agent employed to make sales, and selling on credit, is not authorized subsequently to collect the price in the name of the principal, and payment to him will not discharge the purchaser, unless he can show some authority in the agent other than that necessarily implied in a mere power to make sales. *Seiple* v. *Irwin*, 30 *Penn.* (6 *Casey*) 513. Such authority may be shown by proof, either that the agent was expressly authorized to receive and discharge debts, or that he was held out by his principal to the public, or to the defendant, as having such authority.

A principal is bound by the acts of his agent within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that, he is liable for the acts of the agent within the appearance of authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. For the acts of his agent, within his express authority, the principal is liable, because the act of the agent is the act of the principal. For the acts of the agent,

within the scope of the authority he holds the agent out as having or knowingly permits him to assume, the principal is made responsible, because to permit him to dispute the authority of the agent in such cases, would be to enable him to commit a fraud upon innocent persons. In whichever way the liability of the principal is established, it must flow from the act of the principal. And when established it cannot, on the one hand, be qualified by the secret instructions of the principal, nor, on the other hand, be enlarged by the unauthorized representations of the agent. These principles find ample illustrations in the elementary books, and in decided cases. 1 *Parsons on Cont.* 44, 45 ; 2 *Kent* 620, 621 ; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.,* 3 *Kernan, p.* 632, per Comstock, J.; *F. & M. Bank of Rens. Co.* v. *Butchers' and Drovers' Bank,* 16 *N. Y.* (2 *Smith*) 125 ; *Story on Agency,* § 127 ; *Dunning* v. *Roberts,* 35 *Barb.* 463 ;' *Thurman* v. *Wells,* 18 *Barb.* 500 ; 1 *Am. Leading Cases* 567, ( *fourth edition.*)

Where an agent is entrusted with the possession of goods, with an unrestricted power to sell, (*Higgins* v. *Moore,* 6 *Bosw.* 344,) or payments are made over the counter of the principal's store to a shopman accustomed to receive money there for his employer—*Kaye* v. *Brett,* 5 *Exch.* 269—the authority to receive payment will be implied in favor of innocent persons, because the principal, by his own act, gives to the agent an apparent authority to receive such payment. But if the principal forbids such payments, and requires all payments to be made to himself personally, or to a cashier, and gives a customer notice thereof, the customer would have no right to insist upon the apparent rather than the real authority of the agent.

In the case now before the court, Sheriden had not the possession of the goods. The sale was made on a credit, and the payment was made to him, not over the plaintiff's counter, at his place of business, but at the defendant's hotel. In most respects, the case is similar to that of *Seiple* v. *Irwin,* where the payment to the agent was not sustained. He had no ex-

press authority to collect the debt in question, nor was there any evidence that the plaintiff held him out to the public, or to the defendant, as having such authority. The letter of the plaintiff expressly directs, that the money for this bill should be remitted directly to him. That letter, it is said, was never received by the defendant. The weight of the evidence is that that letter was sent and was received before the payment was made to Sheriden. But independent of that, the evidence on the part of the defendant shows that the bill, which was produced by him at the trial, was received before the goods were unpacked, and that his son, who was his book-keeper, and had charge of receiving those goods, ticked off the goods on the bill, and told the defendant that it was correct.

The defendant testified that he never saw the bill, until after the payment was made to Sheriden, and the son says that he did not read the heading of the bill—that he had not time to do it. The plaintiff did all that prudence and good faith required of him, to prevent the defendant falling into an error in regard to the authority of his salesman. Immediately upon the shipment of the goods, he wrote the letter to the defendant, requiring him to remit direct to him, and enclosed in it the bill of the goods, on the face of which was printed a notice, that salesmen were not authorized to collect. That bill, at least, was in the hands of the defendant's son, who was his book-keeper, and authorized to pay bills, and had charge of comparing the goods with the bill, and who was present when the money was subsequently paid to Sheriden. Not to have seen the directions in the bill-head was the grossest negligence, and to permit a party to defend under the protection of his own carelessness, would be to offer a premium for negligence, and open the door to fraud, especially so when the party is himself bound to see to it, that the person with whom he transacts business, as an agent, has the authority which he assumes. *Capel and another* v. *Thornton*, 3 C. & P. 352, is not a parallel case with this. In that case the defendant dealt

with Ellsworth, the agent, as principal, without any knowledge of his agency. The coal, for the price of which the suit was brought, was ordered of Ellsworth, and the defendant paid Ellsworth. The only evidence of notice of his agency, before the bill was paid, was the vendor's ticket, sent with the coal, and delivered to the defendant's footman, and not shown to have reached the defendant. After the payment was made, a notice was sent to the defendant, by the plaintiffs, to pay the amount to them, or to their clerk, and not to Ellsworth. The defendant had no knowledge of the agency, and the footman was not her agent in relation to that business, and the notice which the defendant did receive came after the payment was made. These circumstances render that case wholly unlike the case now before the court.

It was further insisted, on the argument, that there was evidence of a subsequent ratification, sufficient to go to the jury. It does not appear that any such question was raised at the trial, and if it had been, there is no evidence in the cause that would have justified the jury in finding a ratification by the plaintiff of the unauthorized payment to Sheriden.

The verdict is against the evidence, and contrary to law, and should be set aside and a new trial granted; costs to abide the event.