EWEN C. KENNEDY v. HUGH W. McKAY, JAMES J. REID AND JOHN HALLIARD.

1. An innocent vendor cannot be sued in tort for the fraud of his agent in effecting a sale.
2. In such a case the vendee may rescind the contract and reclaim the money paid, and if not repaid may sue the vendor in *assumpsit* for it, or he may sue the agent for the deceit.

On rule to show cause why a new trial should not be granted.

Argued at February Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the rule, *G. Collins.*

Contra, *Scudder & Vredenburgh.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is a suit bottomed on an alleged fraud committed by the defendants, in the sale of forty shares of the stock of the State Insurance Company to the plaintiff.   The supposed deceit consisted in unfounded representations as to the financial condition of that company.   The stock, at the time of the sale, was standing on the corporate books in the name of the defendant McKay, and the sale was effected by the two other defendants, and who, if the plaintiff's testimony was to be credited, made the statements which the jury has found were fraudulent.   Halliard, one of the defendants, permitted judgment by default to be taken against him, and the verdict has implicated all of the three defendants in the deceit of the transaction.

But this finding, so far as Mr. McKay is concerned, seems to me not to be justified by the evidence.   I have altogether failed to find any testimony that connects him, in respect to any material particular, with this affair.   It is quite conclusively shown that the stock in question was put on the books of the corporation in the name of Mr. McKay, without his knowledge or consent.   Halliard, the president of the insurance company, had purchased these shares, with sundry others, with the moneys of the company, and, wishing to keep them outstanding, had resorted to the device of transferring them to the name of Mr. McKay without asking his consent or apprising him of the step thus unwarrantably taken.   This was the situation when the sale in question was made by Halliard and Reid, the latter then being the secretary of the insurance company.   Both Reid and McKay testify that to the time of this event the latter had no intimation from any source that he was the colorable owner of this stock, and that he had no knowledge whatever that the plaintiff was minded to become a purchaser of any part of the stock of this corporation.   If it be true, therefore, that Halliard and Reid, in selling this property to the plaintiff, represented it as McKay's stock, and, with a fraudulent intent, made false state-

ments touching the financial condition of the company, such misconduct could not affect the defendant McKay. In the presence of this direct evidence, the circumstance relied on to connect him with the ownership of this stock or its sale, are of too uncertain an import to have any controlling effect. They do not raise, in my mind, even a suspicion that he was implicated in this matter.

But even if we were to assume that this stock was, in reality, the property of McKay, and that Halliard and Reid were his agents to make sale of it, still it is not apparent on what legal theory this present action could be sustained. To support this suit against McKay fraud must be imputable to him, and the case is entirely destitute of all testimony tending to show that he authorized, or was privy to the utterance of the false representations in question. On the ground thus assumed, then, the case would be that of a sale made by fraud-doing agents in behalf of an innocent vendor. Whatever uncertainty may at one time have prevailed in regard to the legal incidents of such a position, such uncertainty no longer exists, and the rights, under the given circumstances, of both vendor and vendee, have been plainly defined, and, as I think, firmly settled by recent judicial decisions. In the light of such authorities it is clear that an innocent vendor cannot be sued in tort for the fraud of his agent in effecting a sale. In such a juncture the aggrieved vendee has, at law, two, and only two remedies; the first being a rescission of the contract of sale and a reclamation of the money paid by him from the vendors, or a suit against the agent, founded on the deceit. But in such a posture of affairs, a suit based on the fraud will not lie against the innocent vendor, on account of the deceit practiced without his authority or knowledge, by his agent. If the situation is such that the vendee can make complete restitution, so as to put the vendor in the condition with respect to the property sold that he was in at the time of the sale, he has the right to rescind such contract of sale, and if the vendor, on a tender to that effect, refuses to return the money received in the transaction, a suit will lie for such

money, but such refusal on the part of the vendor will not make him a party to the original wrong, so that he can be sued for the deceit. This is the doctrine declared with much clearness and force by Barons Bramwell and Martin, in the case of *Udell* v. *Atherton*, 7 *H. & N.* 172, and their views on this subject were concurred in, and the principle propounded by them adopted and enforced by the House of Lords in *Western Bank of Scotland* v. *Addie*, *L. R.*, 1 *Sc. App.* 146. In this latter case the action was against the bank for deceit, which was alleged to consist in certain fraudulent representations, charged to have been made on a sale of stock to the plaintiff by the directors of such corporation as its agents. Lord Chelmsford, in giving his views, said : " The distinction to be drawn from the authorities, and which is sanctioned by sound principle, appears to be this : Where a person has been drawn into a contract to purchase shares belonging to a company, by fraudulent misrepresentations of the directors, and suit is brought in the name of the company to seek to enforce that contract, or the person who has been deceived institutes a suit against the company to rescind the contract on the ground of fraud, the misrepresentations are imputable to the company, and the purchaser cannot be held to his contract, because the company cannot retain any benefit which they have obtained through the fraud of their agents. But if the person who has been induced to purchase shares by the fraud of the directors, instead of seeking to set aside the contract prefers to bring an action of damages for the deceit, such an action cannot be sustained against the company, but only against the directors personally." Lord Cranworth, in his opinion, puts himself on the same ground, and says : " A person defrauded by the directors, if the subsequent acts and dealings of the parties have been such as to leave him no remedy but an action for the fraud, must seek his remedy against the directors personally." It is obvious that the doctrine embodied in this decision, which is of so great weight as to be almost entitled to stand as authoritative in this court, if applied to the present case will have the effect of taking

from the plaintiff's suit, so far as it relates to Mr. McKay, every semblance of a foundation. By bringing his action in its present form the plaintiff has given up all idea of a rescission of the contract of sale, and the consequence is that, according to the doctrine of the cases cited, he must connect this last-named defendant with the fraud by which the sale was effected, if he would obtain a judgment against him. But in this he has altogether failed.

The rule should be made absolute.