Decker v. Fredericks.

STATE, ABRAHAM DECKER, PROSECUTOR, v. CHARLES FREDERICKS.

1. A vendor of a horse, sold by his agent authorized merely to sell for a fixed sum, is not responsible for a breach of a warranty made by such agent.
2. An innocent vendor is not liable in an action for deceit brought for the fraudulent representation of his agent.
3. Although the principal may have knowledge of defects in the horse, he is not bound to disclose them, and is an innocent vendor unless he authorized the agent to make misrepresentations or use some artifice to conceal defects.

Argued at June Term, 1885, before Justices KNAPP and REED.

For the prosecutor, *E. Emley.*

For the defendant, *Henry T. Drury.*

The opinion of the court was delivered by

REED, J. The judgment before us is one rendered in the Passaic Pleas, affirming a judgment in the District Court of Paterson.

It was decided in the Common Pleas upon a state of the case settled by the judge of the District Court. The question before us, as it was before the Common Pleas, is whether upon the face of the case as settled any error of law appears in the determination of the District Court. If not, then the judgment before us affirming the determination of the lower court is correct.

It appears from the settled case and record before us that the complaint was that the plaintiff bargained with one Zeluff, an agent of the defendant, to purchase of him a bay mare for $65; that Zeluff knowing the mare to be unkind, untrue and balky, diseased, lamed, crippled and unfit for use, falsely warranting the horse, excepting a split on the front right foot, to

be an excellent draught horse, and to be gentle and kind, sold the said mare to plaintiff; that the mare was at the time of the warranty sick, diseased, crippled and not gentle, but unkind and balky, and entirely unfit for use.

The cause was tried before the court without a jury, and the following is the return of the findings:

"And I do certify that I found and determined as questions of fact, that at the time mentioned in the state of demand, and in the city of Paterson, the defendant, by his duly authorized agent for that purpose, one Nelson Zeluff, together with one Henry S. Wrightenour, sold the said mare of the defendant to the plaintiff for the price of $65, then and there paid by the plaintiff into the hands of said Zeluff, who on the same day paid said amount to the defendant, who informed the defendant that he had sold said mare to the plaintiff for said sum; that upon said sale the said Zeluff and Wrightenour both assured and represented to the plaintiff that the said mare was a good, true horse to pull, and would be a good horse for the plaintiff's business, which business they both knew to be a peddler of kindling wood; that she was a little lame from a split in one foot, but that she would not get more lame, as the defendant had worked her every day and she got no lamer, and that she would do the plaintiff's work well.

"The defendant had advertised the said mare for sale in the Paterson newspapers, which was known to said Zeluff and Wrightenour, and before the sale the defendant expressly authorized said Wrightenour to sell the mare for $65 to the plaintiff.

"I also found as fact that the said mare was a confirmed balky horse at the time of said sale; that while the defendant owned her, and when driven by said Zeluff in presence of the defendant, she had balked with them and refused to draw; that the first time plaintiff drove her after the sale the plaintiff with said Wrightenour went a short distance out of Paterson for a load of wood, and the mare frequently and so obstinately balked that they were obliged to unhitch her and leave the wagon on the road, and that she afterwards continually balked

with the plaintiff, and that she very soon became so lame in the foot with the split hoof that she was totally unfit to work, and the plaintiff could not on that account use her to do his work.

"Said Wrightenour was sworn as a witness on the part of the plaintiff, and testified that on the day of the sale, or the day before the sale, the defendant had authorized him to sell said mare to the plaintiff for $65, but that defendant had not authorized Mr. Wrightenour to make any statement or representation as to the character or quality of the mare.

"The above facts having been proven by the plaintiff's witnesses he rested his case, and the defendant's attorney moved for a nonsuit, which I refused to grant, considering that the plaintiff was bound by the representations of his servants or agents made at the time of the sale.

"I also found as fact in the case that at the time of the sale the defendant knew that the said mare was untrue and balky, and that her split hoof would render her incapable of performing the plaintiff's work.

"I further certify that for some time before and at the time of said sale of the mare, the said Nelson Zeluff was in the employ of the defendant as his hired man, and had charge of said mare and of defendant's stable, and was the regular hired man of the defendant."

The following case against the defendant appears from the foregoing return:

The defendant had a horse which he knew was diseased and balky. He authorized Zeluff and Wrightenour to sell her for $65. Both agents knew that she was unsound and balky. At the time of the sale they represented her to the plaintiff as sound and a true puller.

As the law is settled in this state I do not perceive how any right of action arises against the defendant because of the falsity of the agent's representations. Zeluff and Wrightenour were each special agents to sell the mare. They were not expressly authorized to make any warranty or representation relative to the quality of the mare. No implied authority to

warrant arose by reason of this agency for the purpose of making a sale. *Cooley* v. *Perrine*, 12 *Vroom* 322.

Nor does any action arise within the exception noticed in. the opinion in the Supreme Court delivered in the case of Cooley *v.* Perrine, namely, that a principal is responsible for the fraud of his agent, committed in the course of his employment, for the benefit of his employer.

For if this action can be treated as one for deceit, and not for breach of warranty merely, in view of the pleading, yet no participation in the fraudulent representation on the part of the principal is charged or proven in the case. He had the right to sell this horse, and to authorize his agent to sell her, although he knew that she possessed the faults proven. He was not responsible for not revealing or for his agent's failure to reveal the defects, so long as no misrepresentation was made or artifice used to disguise the defect.

The law was settled in *Beninger* v. *Corwin*, 4 *Zab.* 257, to this effect, and it was ruled that a failure on the part of the vendor to disclose unsoundness or faults was not fraud at law.

The defendant, therefore, was an innocent vendor, as he neither authorized any representations to be made or artifice to be used to conceal defects, by his agent, in effecting the sale. To what degree, then, is the fraudulent representation of his agent imputable to him ? That his contract is affected by this fraudulent conduct on the part of his agent is not a matter for discussion, but the extent of its operation has been discussed, and has been settled in this court in the case of *Kennedy* v. *McKay*, 14 *Vroom* 288. The doctrine settled by that case is that the purchaser, upon discovery of the fraud, can treat the contract as voidable because of the fraud which led to it, and he can rescind by returning the property purchased and sue the principal for the consideration paid, or he can retain the fruits of the contract and bring his action against the agent who made the fraudulent representations, for deceit. This is the extent of his remedies. He cannot sue the principal for the deceit of his agent.

Atlantic City Water Works Co. v. Smith.

In either aspect, treating the present action as one for breach ·of warranty or deceit, the judgment below was erroneous and should be reversed, with costs.