8 N.J. Super. 130 (1950)
73 A.2d 586
WILLIAM MESCE, PLAINTIFF-RESPONDENT,
v.
AUTOMOBILE ASSOCIATION OF NEW JERSEY, A CORPORATION, AND ATLANTIC CASUALTY CO., A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1950.
Decided May 26, 1950.
*132 Before Judges COLIE, EASTWOOD and JAYNE.
Mr. Harry Green argued the cause for the appellant (Messrs. Harkavy & Lieb, attorneys).
Mr. William Furst argued the cause for the respondent (Messrs. Furst & Kessler, attorneys).
The opinion of the court was delivered by JAYNE, J.S.C. (Temporary assignment.)
The present appeal impugns the factual justification and the judicial propriety of a final judgment granted by the judge of the Essex County District Court in favor of the plaintiff and against the defendant Automobile Association of New Jersey.
*133 The plaintiff obtained his judgment upon proof of the following congregation of facts. He had acquired a passenger automobile pursuant to a conditional sale agreement and with the financial aid of the First National Bank and Trust Company of Paterson, New Jersey. The insurance coverage was supplied by the Provident Washington Insurance Company of Rhode Island. In consequence of a mishap, the period of the insurance was terminated and the plaintiff was instructed by the bank to discontinue the use of the motor vehicle until other insurance was substituted.
The plaintiff had previously procured membership in the Automobile Association of New Jersey through the sponsorship of a Mr. Green. That circumstance doubtless induced him to communicate by telephone with the Association and inquire for Mr. Green in the effort promptly to provide the desired insurance. He was unable to confer with Mr. Green.
It may, however, be reasonably inferred that it was due to the telephone inquiries that on the evening of January 6, 1949, one James Mooney visited the plaintiff's residence. The plaintiff divulged to Mooney the circumstances of his plight and imparted to him his immediate need of insurance. Mooney possessed and displayed printed forms of the applications and receipts of the Association. The application was forthwith prepared, signed by the plaintiff as "applicant" and by Mooney as "producer." The plaintiff did not then have available the requisite $50 deposit, but he assured Mooney that it would be forthcoming on the following evening.
On the following evening Mooney returned and collected the deposit of fifty dollars. He delivered to the plaintiff a receipt for the payment on the printed form of the Association dated January 7, 1948 (sic) [1949] "on account of membership ins." to which he subscribed his signature on the line immediately beneath the title "Automobile Association of New Jersey." Mooney expressly represented to the plaintiff that by virtue of the application and the payment of the deposit, he acquired immediately comprehensive automobile insurance coverage and protection.
*134 The secretary of the Association testified that Mooney was not in the employ of the Association and not authorized to act as its agent. He is characterized as a general insurance broker among which class such printed forms are distributed, presumably in conformity with the customary practice of insurance companies.
In the narrative of events to which the evidence relates is the assertion by Mrs. Worne of the Underwriting Department of the Association that having noticed on the application that the plaintiff's previous insurance had been cancelled, she personally composed and dispatched by mail to the plaintiff a letter on January 7, 1949, stating:
"We have received your application for insurance and thank you for same.
"We wish to advise however, that this application is not binding until our investigation has been completed."
The plaintiff denies that he received the letter. It is said, however, that a report on the plaintiff's application was forthwith requested from Retail Credit Co. It was conceded that such reports are not in all instances solicited and that in some, insurance coverage is afforded immediately upon the receipt of the application.
Now the culmination. On January 13, 1949, the plaintiff's automobile was involved in an accident. The Association was notified of the occurrence. In a letter bearing date January 13, 1949, enclosing a check dated January 14, 1949, the Association informed the plaintiff:
"Investigation with regard to your application for insurance has been completed. We regret we are unable to place this policy. We enclose herewith check in the sum of $50.00 deposit."
The motion to dismiss the alleged cause of action against Atlantic Casualty Company was granted at the conclusion of the plaintiff's evidence. The alleged cause of action against the Association, however, was thereafter transformed into one grounded upon fraud and deceit. The judgment awarded damages to the plaintiff in the sum of $775.
*135 Two predominant questions are at once perceptible. Did the Association by its acts invest Mooney with the apparent and ostensible authority to serve as its agent in the transaction? If so, is the Association in the circumstances of the present case responsible in tort for Mooney's misrepresentation that the insurance protection was instantly effective?
Fundamentally, the liability of the alleged principal must flow from the act of the principal. It is, of course, the general rule that the principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume or which he holds the agent out to the public as possessing. The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question. Law v. Stokes, 32 N.J.L. 249 (Sup. Ct. 1867); J. Wiss & Sons v. Vogel Co., 86 N.J.L. 618 (E. & A. 1914); Baurhenn v. Fidelity, &c., of Maryland, 114 N.J.L. 99 (E. & A. 1935); Jacob Ruppert v. Jarnstedt & Co., 116 N.J.L. 214 (E. & A. 1936). When established, the authority, implied or apparent, can neither be qualified by the secret instructions of the principal nor enlarged by the unauthorized misrepresentations of the agent. Law v. Stokes, supra.
The act of the Association in supplying Mooney with forms with which to solicit applications for insurance was evidently regarded as evidence of his apparent agency. Conspicuously observable at the head of the form entitled "Application" is the declaration "This application is not a binder." Mooney's authority in that respect was manifestly circumscribed.
True, the plaintiff avows that he did not notice that statement on the application. His failure to do so in nowise augments or subtracts from the apparent authority conferred by the Association. As previously stated, the alleged authority must emanate from the voluntary actions of the principal and not from the inattention of the third party.
*136 While one who is sued for fraud cannot successfully plead that if the plaintiff had exercised reasonable care, he would not have been defrauded, yet where no active wrongdoing is attributed to the principal and the action is constructed upon the fraud of an agent who was not instructed or actually or impliedly authorized to commit it, there can be no recovery by a plaintiff who could have readily protected himself by opening his eyes and at once observing on the face of the paper which he signed the falsity of the agent's representation. This plaintiff was stricken by insouciance. Many centuries ago a Greek philosopher stepped into a well while looking at the stars, from which experience came the maxim: "He who looks foresees the peril that the heedless encounters."
Moreover, apparent authority by which a principal is bound is only that which "a person of ordinary prudence" is justified in presuming from the conduct of the principal. Such authority is not to be expanded by the carelessness and indifference of the third party nor erected upon the misrepresentations of the agent. In that particular, the present case has a noticeable resemblance to that of Law v. Stokes, supra. In the latter case on the bill for the purchase of goods from a salesman there was printed plainly and conspicuously in the heading, "all remittances on account, or in settlement of bills, must be made direct to the principal; salesman not authorized to collect." The purchaser, carelessly ignoring the statement, made payment to the salesman, who forthwith absconded. It was held that the salesman was unauthorized to receive the payment. Similarly in the present case the apparent authority of Mooney was explicitly restricted in the precise respect in which the plaintiff sought through Mooney's conduct to fasten liability upon the Association.
To sustain the plaintiff's recovery of such an award of damages it must have been determined that Mooney's deceit was imputable to the Association in the conformation of a tortious wrong.
In Kennedy v. McKay, 43 N.J.L. 288 (Sup. Ct. 1881), Chief Justice Beasley regarding with esteem the decision of *137 Barons Bramwell and Martin in Udell v. Atherton, 7 H. & N. 172, and its subsequent adoption by the House of Lords in Western Bank of Scotland v. Addie, L.R. 1 Sc. App. 146, resolved that an innocent vendor could not be sued in tort for the fraud of his agent in effecting a sale and that in such an exigency the aggrieved vendee has at law only two remedies: a rescission of the contract of sale and a reclamation of the money paid by him in an action in assumpsit, or a suit against the agent, founded on the deceit.
His decision was followed or cited with approbation in our former Supreme Court in Titus & Scudder v. Cairo and Fulton R.R. Co., 46 N.J.L. 393 (Sup. Ct. 1884); Decker v. Fredericks, 47 N.J.L. 469 (Sup. Ct. 1885); White v. N.Y., Susq. & W.R.R. Co., 68 N.J.L. 123 (Sup. Ct. 1902); and by the Court of Errors and Appeals in Keen v. James, 39 N.J. Eq. 527, 540 (E. & A. 1885); Marsh v. Buchan, 46 N.J. Eq. 595 (E. & A. 1890); Brounfield v. Denton, 72 N.J.L. 235 (E. & A. 1905); Reitman v. Fiorillo, 76 N.J.L. 815 (E. & A. 1908).
In 1912 Justice Kalisch in delivering the opinion of the Court of Errors and Appeals in Corona Kid Co. v. Lichtman, 84 N.J.L. 363 (E. & A. 1913), characterized the statement that an innocent principal cannot be held answerable for the fraud of an agent as expressed in Kennedy v. McKay to be merely dictum. Assuredly in the circumstances of the Kennedy case it was judicial dictum as distinguished from obiter dictum and in that respect it has been accorded noticeable recognition.
In the year 1915 Justice Parker observed that the responsibility of an innocent principal for the fraud of an agent "has been one of the vexed questions of the law." Some pertinent quotations selected from his opinion in Mick v. Corporation of Royal Exchange, &c., 87 N.J.L. 607, 613 (E. & A. 1915), are informational: "That an innocent principal cannot, as a general proposition, be permitted to benefit by the fraud of his agent, has been settled in this court * * * It seems to be settled that a principal is not liable in tort *138 for deceit, upon fraudulent representations made by his agent without his knowledge or consent * * * the remedy in such case resting on a rescission of the contract. But this seems to relate mainly to the form of the remedy. In many cases the controlling factor was the extent of the agent's authority; and such authority was held to have been exceeded * * * while in others, the scope of the authority was held to cover the fraudulent acts and the principal had to suffer."
Next ensued the opinion in Crescent Ring Co. v. Travelers' Indemnity Co., 102 N.J.L. 85 (E. & A. 1926), in which the court declined to reject the doctrine enunciated in Kennedy v. McKay.
Reverting now to the inspection of the case sub judice, we may recognize the determination of the trial judge that Mooney was authorized by the Association to solicit applications for membership insurance, but in the existing state of the evidence he had only such authority as the Association by its acts had apparently and ostensibly permitted him to assume or the authority which the Association held him out to the public as possessing. Here the fraud of the agent consists in his false representation of authority which the Association had in an exceedingly pragmatical manner informed the public he did not possess. In such a situation, to visit liability upon the principal because the plaintiff failed to acquaint himself with the statements conspicuously printed on the application form submitted to him, would introduce into the law a thin and precarious principle.
The judgment is reversed.