18 N.J. Super. 134 (1952)
86 A.2d 788
CHARLES PERIGOT, PLAINTIFF-RESPONDENT,
v.
JACOB STEIKER, MEYER STEIKER, DEFENDANTS, AND SYDNEY STEIKER, TRADING AS STEIKER MOTORS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1952.
Decided February 13, 1952.
*136 Before Judges McGEEHAN, JAYNE and Wm.J. BRENNAN, JR.
Mr. A. Leo Bohl argued the cause for appellant (Mr. Joseph J. De Luccia, on the brief).
Mr. Stephen Mongiello argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
A course of common events sometimes produces an aspect of legal complexity. Here the plaintiff merely sought to dispose of his model 1939 truck and acquire two model 1944 trucks. We relate the eventualities.
The plaintiff negotiated with one Rawlings who was a salesman in the employ of the defendant Sydney Steiker, trading as Steiker Motors. The bartering between them resulted in the execution on March 5, 1948, by both the plaintiff and the salesman of a memorandum entitled "Purchase Order" wherein it appears to have been mutually agreed between them in the absence of the defendant that the plaintiff would purchase from the defendant two trucks, the one designated "1 Fed 29 M 1944," the other "1 Fed 18 M 1944," for the total price of $4,700; that the plaintiff would make an initial payment of $1,000 in cash to be applied on account of the purchase price; that the balance would be payable in monthly instalments evidenced by a series of promissory notes, and that a "trade-in" value of $800 would be allowed the plaintiff for his truck, which sum would be credited upon the instalment notes.
However, two conditional sale agreements in the conventional form were thereafter prepared by the defendant. The one agreement dated March 12, 1948, related to the sale of Federal truck 18 M 1944 for the price of $3,050, crediting thereon the sum of $1,017, leaving a balance payable in 15 monthly instalments of $158.98 each; the other agreement dated March 15, 1948, also related to a Federal truck 18 M 1944 of a different serial number for the price of $2,450, *137 upon which a credit of $817 is noted with a balance likewise payable in 15 instalments of $128.12 each.
The agreements were forthwith assigned and the accompanying promissory notes negotiated by the defendant to Credit Corporation. The initial instalment due in April, 1948, was paid to Credit Corporation by the plaintiff; the May, 1948, instalment was paid by the check of the defendant, but whether it was paid by the defendant out of his own funds or in pursuance of a cash payment delivered to him or to Rawlings by the plaintiff was in dispute. The instalments maturing in June, July, and August were not paid and the two trucks were repossessed by Credit Corporation on August 20, 1948.
Although financially able to pay the instalments in default and regain possession of the trucks, the plaintiff refrained from doing so. The salesman Rawlings died.
The plaintiff prosecuted this action to recover compensatory damages from the defendant upon the allegation that in consequence of the agreement between the plaintiff and the salesman Rawlings made on March 5, 1948, the defendant was contractually obligated to pay the three instalment notes due in the months of May, June, and July, and that the defendant failed to fulfill that obligation. This footing of the plaintiff's alleged cause of action is evinced by the complaint and, indeed, more definitely by the pretrial order.
The plaintiff sought to recover from the defendant the deposit of $1,000, the trade-in allowance of $800, the $61.30 paid to Rawlings in cash, the amount paid to Credit Corporation in discharge of the first note, and loss of profits resulting from the repossession of the trucks by Credit Corporation. The jury rendered a verdict in his favor against the defendant Sydney Steiker in the sum of $3,361.
Preliminarily we observe that there are three writings relating to the transaction, namely the "purchase order" dated March 5, 1948, the conditional sales agreement concerning one truck dated March 12, 1948, and a similar agreement relative to the other truck dated March 15, 1948. *138 Each of the sales agreements embodies the stipulation: "Purchaser acknowledges receipt of a true copy of this agreement which contains the entire contract and supersedes all other agreements." Neither includes any term, provision, or covenant requiring the defendant to pay any of the monthly notes. Indeed, in the agreement of March 15, 1948, the plaintiff is given credit for the trade-in allowance for his truck in the sum of $800 on account of the purchase price of the truck therein specified. Obviously if the defendant was also obliged to pay the three notes, the trade-in allowance would in effect amount to $1,600. The plaintiff asserts no such claim.
How, then, could the plaintiff predicate his alleged cause of action upon the purchase order of March 5, 1948? The answer is that he denied that he signed either of the sales agreements and disclaimed any knowledge of their terms. If his abnegation were true, we pause momentarily to wonder why the Credit Corporation accepted the assignments of the sales agreements and discounted the promissory notes.
However, let us venture to theorize that the purchase order of March 5, 1948, in so far as it related to the provision for the payment of the three notes, constituted an independent and collateral undertaking entered into by the defendant's salesman. We notice that the printed purchase order has three lines for signatures. Beneath one is the designation "Purchaser," beneath another the title "salesman" underneath which is the statement, "This order is valid only when accepted and signed by Mgr. or Sales Mgr. Accepted.... Manager." There is no signature on the last mentioned line indicating any acceptance of the order, even by Rawlings.
It is the well settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood, and assented to its terms. Fivey v. Pennsylvania Railroad, 67 N.J.L. 627 (E. & A. 1902); Dunston Litho. Co. v. Borgo, 84 N.J.L. 623 (E. & A. 1913); Champlin v. Davis, 94 *139 N.J.L. 523 (E. & A. 1920); Diamond Rubber Co. v. Feldstein, 112 N.J.L. 514 (E. & A. 1934); Kearney v. National Grain Yeast Corp., 126 N.J.L. 307 (E. & A. 1941); Fortunel v. Martin, 114 N.J. Eq. 235 (E. & A. 1933); Equitable Life, &c., v. Gutowski, 119 N.J. Eq. 181 (Ch. 1935); Metropolitan Life Insurance Co. v. Lodzinski, 121 N.J. Eq. 183 (Ch. 1936), reversed on other grounds, 122 N.J. Eq. 404 (E. & A. 1937); Silbros, Inc., v. Solomon, 139 N.J. Eq. 528 (Ch. 1947).
The plaintiff did not disavow knowledge of the stated limitation of the validity of the terms of the purchase order but testified that Rawlings who signed as salesman orally represented to him that he was manager.
While we confine our decision to the grounds of appeal specifically assigned, yet we nevertheless measure their significance and substantially in the light of the controversial issues at the trial which resulted in the judgment under review. Here the defendant in pursuance of the averments of his defense as recorded at the pretrial conference testified that at the time he had in his employ some ten salesmen, including Rawlings, whose services consisted solely in soliciting customers for the purchase and sale of motor vehicles; that none was the manager or sales manager or possessed authority to confirm on behalf of the defendant the orders he negotiated; that neither Rawlings nor the plaintiff ever brought to his attention the purchase order of March 5, 1948, and that the only terms of the sales of which he had notice or knowledge were those embodied in the sales agreements executed by both him and the plaintiff.
Obviously in the aspect of any theory of the plaintiff's cause of action, the extent of the authority of the salesman Rawlings was in view of the limitation conspicuously expressed on the order form a paramount factual issue, if there was any. There was no proof of any authority expressly conferred upon Rawlings to accept the order on behalf of the defendant. The plaintiff endeavored to establish the implied or apparent authority of Rawlings.
*140 "Fundamentally, the liability of the alleged principal must flow from the act of the principal. It is, of course, the general rule that the principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume or which he holds the agent out to the public as possessing. The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question. Law v. Stokes, 32 N.J.L. 249 (Sup. Ct. 1867); J. Wiss & Sons v. Vogel Co., 86 N.J.L. 618 (E. & A. 1914); Baurhenn v. Fidelity, &c., of Maryland, 114 N.J.L. 99 (E. & A. 1935); Jacob Ruppert v. Jernstedt & Co., 116 N.J.L. 214 (E. & A. 1936). When established, the authority, implied or apparent, can neither be qualified by the secret instructions of the principal nor enlarged by the unauthorized misrepresentations of the agent. Law v. Stokes, supra." Mesce v. Automobile Association of New Jersey, 8 N.J. Super. 130 (App. Div. 1950).
In dealing with that issue the trial judge in his charge to the jury stated:
"Now, Ladies and Gentlemen of the Jury, the defendant in this case, Steiker, states that Rawlings was never in power to execute the contract, which the plaintiff says was had between him and the Steiker Motor Company. On the other hand, the plaintiff says that Rawlings represented to him that he was the Sales Manager of the Company.
Now, the question that must confront you is whether or not this Rawlings was an agent of Steiker to the effect that he did have the power to act for and on behalf of his principal."
The inescapable import of the court's instruction is that the jury should in the consideration of the extent of the authority of the agent Rawlings balance the testimony of the defendant with the representations said by the plaintiff to have been made to him alone by Rawlings. This instruction was manifestly erroneous in law and undoubtedly harmful to the defendant.
The declarations of Rawlings, not in the presence of the defendant, although accompanying his acts, constituted no competent evidence of the extent of Rawlings' implied or apparent authority legally implicating the defendant. *141 Dowden v. Cryder, 55 N.J.L. 329 (E. & A. 1893); Ryle v. Manchester Bldg. & Loan Ass'n., 74 N.J.L. 840 (E. & A. 1907); Van Genderen v. Paterson Wimsett Thrift Co., 128 N.J.L. 41, 44 (E. & A. 1942); Van Dusen Aircraft Supplies, Inc., v. Terminal Const. Corp., 3 N.J. 321 (1949); Mueller v. Seaboard Commercial Corp., 5 N.J. 28 (1950).
The test was whether under the circumstances disclosed by the evidence, a person of ordinary prudence, conversant with business usages and the nature of the particular transaction, would be justified by reason of the defendant's acts, not by those of Rawlings, in presuming the existence of the requisite authority. J. Wiss & Sons Co. v. H.G. Vogel Co., 86 N.J.L. 618 (E. & A. 1914); Jacob Ruppert v. Jernstedt & Co., 116 N.J.L. 214 (E. & A. 1936); Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 570 (App. Div. 1951).
In that particular the court charged:
"If Rawlings had the authority to act for Steiker, who was his principal, whether that right was expressed or implied, as I have heretofore explained it to you, and if the plaintiff used such judgment as an ordinary prudent person would have used in dealing with Rawlings, then this plaintiff would be entitled to recover.
If there was no such authority by Rawlings to act for Steiker in the manner in which he did in this particular transaction, or which could be discovered by use of ordinary caution and inspection by this plaintiff, then there can be no recovery by the plaintiff and your verdict in that posture would have to be in favor of the defendant of no cause of action." (Emphasis ours.)
We conclude that the jury derived from the charge of the court an incorrect impression of implied and apparent authority as recognized in the law and a misunderstanding of the requisite elements of proof of such authority.
The judgment must be reversed, but we bestow serious consideration upon whether the motion made at the close of the trial for judgment in favor of the defendant should not have been granted.
There is no proof of the ratification by the defendant of the alleged agreement to pay the notes. There is no *142 competent evidence beyond a mere scintilla to justify a reasonable and logical inference that the defendant by his conduct permitted Rawlings to assume or held him out as possessing the authority to act as manager or sales manager, and the plaintiff presumably noticed that Rawlings did not sign the memorandum of March 5, 1948, as such. A diligent and circumspect examination of the record persuades us that the motion should have been granted.
The judgment under review is reversed, and the record is returned to the Law Division with directions to enter a judgment in favor of the defendant.