**FAIRMONT ALUMINUM COMPANY, Plaintiff,**

v.

**STUART ENGINEERING & MANUFACTURING COMPANY, Defendant.**

Civ. A. 734-55.

United States District Court
D. New Jersey.
April 30, 1957.

508

John P. Loftus, Jersey City, N. J., and George W. Sullivan, New York City, for plaintiff.

Emanuel Silberner, Newark, N. J., for defendant.

WORTENDYKE, District Judge.

This is a diversity action ex contractu for the price of goods sold and delivered by plaintiff, a corporation of the State of West Virginia, to defendant, a corporation of the State of New Jersey.

It is conceded that, prior to the transaction upon which the plaintiff's claim is based, the defendant had been engaged in the engineering and manufacturing of certain products involving the use of aluminum, at its premises designated as 907 Frelinghuysen Avenue, in the City of Newark, New Jersey, and that, for the purposes of its business, the appropriate representative of the defendant had authorized the adoption and use of a form of purchase order, bearing the printed caption "Purchase Order Stuart-Engineering and Manufacturing Co., 907 Frelinghuysen Avenue, Newark 5, New Jersey," and at the foot of the obverse thereof the printed name of that company above and the printed designation "Purchasing Agent" below a line opposite the printed designation "Per" provided for a signature. There was testimony in the case that the premises above referred to consisted of a manufacturing building upon the exterior of which, at all times hereinafter mentioned, was a sign bearing the name of the defendant.

In due course of mail the plaintiff received an order, upon one of the purchase order forms above described, numbered 9010, and dated February 2, 1955, bearing the signature of one W. T. Suggs upon the line immediately above the designation "Purchasing Agent." This order called for the rush delivery to the defendant of 10,000 pounds of "Aluminum coil stock as previously supplied to Victor Metal Products Corp., 193 Newell Street, Brooklyn, N. Y." at a price of $0.409 per pound. Under date of February 7, 1955, plaintiff, by its "Confirmation of Order" form, confirmed its acceptance of the foregoing purchase order. The merchandise described in both of those documents was thereafter timely shipped to and received at the premises of the defendant, where it was unloaded and receipted for on March 7, 1955 by one Nicholas George, who had been employed by the defendant during the first week in January of that year, and for nine weeks thereafter. Defendant's payroll records indicate that Suggs and George respectively received salary or

wage payments from defendant for periods ending March 4, 1955.

It is further uncontradicted that there became due to the plaintiff, for the merchandise shipped and delivered, the sum of $3,988.44, payable as per plaintiff's invoice, on or before April 4, 1955; and that no part of this amount nor of any interest accrued thereon has been paid by or for the account of the defendant.

Defendant bases its denial of liability to the plaintiff upon the contention that on the date of the purchase order (February 2, 1955) the defendant corporation, although still in existence, had ceased doing business, and that Mr. Suggs, whose name was signed to that purchase order over the designation "Purchasing Agent," was at that time neither an officer nor employee of the defendant, and was not authorized to order the merchandise described in the purchase order, in behalf of the defendant. Suggs testified that early in 1955 one Muscat, President of Victor Metal Products Corporation, having a manufacturing plant in Brooklyn, New York, caused some machinery to be transported from that plant to the premises at 907 Frelinghuysen Avenue, Newark, for use in the manufacture of aluminum "starter cans," and that a New Jersey corporation was formed, bearing the name Impacts, Inc., of which Suggs became or was to become President, although he was to hold no stock therein. Such a corporation was incorporated on February 14, 1955; but, according to information furnished by the New Jersey Secretary of State, it never filed an annual report of its officers and directors, as required by the Corporation Law of that State, N.J.S.A. 14:6–2. Suggs testified that he was instructed by Muscat to purchase aluminum for the contemplated production by Impacts, Inc., from the plaintiff company, from which a previous purchase by Muscat had been made.

Plaintiff's salesman, Braun, called at the premises of defendant in Newark in January of 1955 for the purpose of soliciting business, spoke to Mr. Suggs and was told by him that he was in the market for aluminum. This salesman had more than one conversation with Suggs and testified that at least one of these conversations was face to face. Suggs admitted that he had talked with Braun, but asserted that it was only by telephone. However, Braun testified that on February 2, 1955 he spoke to Mr. Suggs on the telephone, and was told by the latter that the defendant, Stuart Engineering and Manufacturing Company, desired to purchase 10,000 pounds of aluminum (the quantity here in question). This testimony was not directly contradicted; nor was Braun's further testimony that on February 9, 1955 he visited defendant's premises in Newark where he spoke to Gamerov, who was admittedly the President of the defendant, and asked him for information respecting the defendant's financial position, in order that he might determine whether the defendant was a safe credit risk. Such information was refused by Gamerov, but Braun was given some credit references by him, and in reliance upon these credit references the merchandise called for by the purchase order was shipped by the plaintiff to the defendant on March 4, 1955, and invoiced as of that date for net cash payment within 30 days. Mr. Braun also testified that on March 10, 1955, he again telephoned Mr. Suggs, inquired whether he needed more metal, and was advised that he had enough.

It is conceded that defendant never protested the invoicing of the merchandise to it, nor was plaintiff's follow-up letter of April 21, 1955 addressed to Mr. Milton C. Dorison, Treasurer of Stuart Engineering and Manufacturing Co., Inc., demanding payment of the invoice, ever responded to. Dorison was admittedly the Vice-President and Treasurer of the defendant, and also a stockholder and director thereof.

The evidence further supports the finding that no stock of Impacts, Inc. was issued, and that that company had no bank account. It was organized by the defendant to conduct the business which defendant had been previously conducting, and in contemplation that the de-

fendant would become a substantial stockholder thereof. Because Impacts, Inc. had no funds with which to conduct its operations, its alleged employees and officers, as well as its expenses for raw materials and other financial obligations, were paid by defendant and thereafter charged back against Impacts, Inc. on defendant's books.

Although Gamerov, defendant's President, testified that neither he nor his Board of Directors ever authorized the purchase of the merchandise from plaintiff in the defendant's behalf, he admitted that the purchase order form employed by Suggs in the transaction under consideration was authorized and intended for use in purchasing raw material for the defendant.

Although contradicted by Suggs, Braun testified that Suggs told him that he was the Purchasing Agent of the defendant when the purchase order was signed by Suggs in such a represented capacity. The evidence is barren of any suggestion that during the negotiations between Suggs and plaintiff's salesman any reference was made either to the actual or contemplated existence of Impacts, Inc., or to any contemplation on the part of Suggs that merchandise admittedly sold and delivered by the plaintiff to the defendant was intended for or to be charged to Impacts, Inc. Impacts, Inc. was not incorporated until February 14, 1955. The purchase order was signed by Suggs on February 2, 1955.

■ The factual picture presented in this case fits quite neatly into the pattern recognized as supportive of a finding of apparent authority. Accepting *arguendo* defendant's contention that Suggs was not expressly authorized to order the merchandise from the plaintiff in behalf of and at the expense of the defendant, there is, nevertheless, ample evidence that the defendant held out to the plaintiff and its representative a display of apparent authority in Suggs to act for the defendant. Applying to this diversity case, as we must, the law of New Jersey, in which this Court sits, we adopt the language of its Court of Errors and Appeals in J. Wiss & Sons Co. v. H. G. Vogel Co., 1914, 86 N.J.L. 618, at page 621, 92 A. 360, 361:

> "As between the principal and third persons the true limit of the agent's power to bind the principal is the apparent authority with which the agent is invested. The principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. And the reason is that to permit the principal to dispute the authority of the agent in such cases would be to enable him to commit a fraud upon innocent persons." Citing Law v. Stokes, 32 N.J.L. 249.

The foregoing principle has been more recently recognized by the Appellate Division of the Superior Court of the same State in Herron v. Sheridan Gardens, Inc., 1954, 31 N.J.Super. 584, 107 A.2d 564, and by its Supreme Court in Yannuzzi v. United States Casualty Co., 1955, 19 N.J. 201, 115 A.2d 557. In the Herron case [31 N.J.Super. 584, 107 A.2d 566], the language of Judge Jayne in Mesce v. Automobile Association of New Jersey, App.Div.1950, 8 N.J.Super. 130, 73 A.2d 586, is employed to describe the factual issue presented in a case of apparent authority, as follows:

> " 'The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question. [Citing cases.] When established, the authority, implied or apparent, can neither be qualified by the secret instructions of the principal nor enlarged by the unauthorized misrepresentations of the agent.' "

In the case at bar plaintiff's salesman went to defendant's premises to solicit

the purchase of merchandise from the plaintiff similar to that which had previously been shipped by the plaintiff to another purchaser to the same premises in the defendant's care. The defendant had provided printed purchase order forms for use in ordering such materials for itself. It had an actual or a contemplated controlling stock interest in Impacts, Inc. By its control over the latter company and its employees, through which it intended to conduct manufacturing operations using the ordered material at the plant of which the defendant was still in possession and which still bore its name, it did, by its voluntary act, place Suggs in such a situation that Braun, plaintiff's salesman, whom I find to be a "person of ordinary prudence and conversant with business uses and the nature of the particular business" for which the merchandise was intended, was justified in presuming that Suggs had the authority to order and to commit defendant to the payment of the cost of the merchandise which the plaintiff sold and which was delivered to defendant's premises.

Defendant was in existence and possession of the premises to which and at the time when the merchandise was delivered and the invoice received. Defendant made no protest of the charge in the invoice, nor did it refuse or offer to return the merchandise. Neither did plaintiff's confirmation of the purchase order before any material was shipped nor did the plaintiff's follow-up letter demanding payment of April 21, 1955, over a month after receipt of the shipment, evoke any denial on the part of the defendant that it had ordered the merchandise or that it was properly chargeable with its price. Under these circumstances, I find that the plaintiff was justified in assuming the ostensible authority of Suggs, and ¬he acceptance and tacit undertaking to pay for the merchandise by the defendant. Defendant is now estopped to deny Suggs' authorized agency and to disclaim its obligation for payment of the price of the merchandise.

I find that the plaintiff is entitled to recover from the defendant the sum of $3,988.44, the amount of the net price of the merchandise sold and delivered in accordance with the terms of the invoice covering the same, together with interest thereon from April 4, 1955 (30 days after the date of the invoice) at the rate of 6% per annum. Plaintiff is entitled to judgment accordingly. This opinion shall constitute the Court's findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C. An order for judgment may be submitted in accordance herewith.