71 N.J. Super. 82 (1961)
176 A.2d 309
JAMES ELGER, PLAINTIFF,
v.
JOSEPH M. LINDSAY AND DONALD E. McCONNELL, DEFENDANTS AND JOSEPH M. LINDSAY, THIRD-PARTY PLAINTIFF,
v.
SELECTED RISKS INSURANCE COMPANY, THIRD-PARTY DEFENDANT AND DONALD E. McCONNELL, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
JAMES SNYDER, AND ALL-STATE INSURANCE COMPANY, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Salem County Court, Law Division.
Decided November 30, 1961.
*83 Mr. George S. Friedman, attorney for plaintiff.
Mr. Donald L. Masten, attorney for defendant Donald E. McConnell.
Mr. Joseph Narrow, attorney for defendant Joseph M. Lindsay.
Messrs. Hannold & Hannold (Mr. E. Milton Hannold, appearing), attorneys for third-party defendant Selected Risks Insurance Co.
Messrs. Kisselman, Devine, Deighan & Montano (Mr. Carl Kisselman, appearing), attorneys for third-party defendant All-State Insurance Co.
*84 Mr. Frank L. Sorrentino, attorney for third-party defendant James Snyder.
FEATHERER, J.C.C.
On or about March 1, 1959 plaintiff James Elger was a passenger in the automobile owned and operated by defendant Donald E. McConnell, when it was involved in an accident with an automobile owned and operated by the defendant Joseph M. Lindsay. Plaintiff sustained serious injuries. The pretrial order lists hospital and medical expenses in excess of $4,000, as well as loss of wages and other expenses not specifically enumerated. The plaintiff instituted his suit against both drivers. It would appear that both defendants undertook to turn the suit papers over to their respective insurance carriers, and both companies denied liability, resulting in each defendant's bringing in his respective carrier by third-party action. The defendant Lindsay sued Selected Risks Insurance Company as a third-party defendant, and defendant McConnell sued All-State Insurance Company and James A. Snyder, its alleged agent, as third-party defendants.
In view of the decision in Wormack v. Howard, 33 N.J. 139 (1960), and pursuant to R.R. 4:43-2(a), the trial of the issues involved in the third-party actions was brought on for trial before the court, without a jury. The primary case has not as yet been tried.
In the action by Lindsay against Selected Risks Insurance Company, it was admitted that there was a policy in force at the time of the accident; that Lindsay failed to give notice to said carrier for a period of more than nine months after the accident, and in the meantime had paid a property damage claim (not involving any of the parties to this action) without permission of the carrier and in violation of said policy. These facts were fully substantiated at the trial, and a judgment of no cause of action entered in favor of this third-party defendant.
McConnell's action against All-State and Snyder is not based upon a policy but rather sounds in an action of *85 deceit and indemnification for loss which he may sustain in the action by plaintiff.
McConnell's testimony as to claim against All-State and Snyder was that he purchased the 1958 Chevrolet automobile involved in the subsequent accident from a dealer Smith in Woodstown in October 1958; that he purchased collision insurance from Smith, and applied to third-party defendant Snyder for liability insurance, for which he signed an application at the top of which he claims the name of All-State appeared, and that his policy was to be delivered in ten days or two weeks; that the premiums for both policies were financed and paid to the respective agents by the financing bank. Defendant Snyder by his answer admits receiving a premium in the amount of $184.50, which it was stipulated would be the premium on a standard $10,000/$20,000 liability policy, and that he still retains the sum of $184.50 for McConnell's use. McConnell testified that he stopped at Snyder's home for the policy and was told by Snyder that he was covered and the policy would be forthcoming, and that in all he made four requests by visits and telephone requests; that he understood he was buying All-State insurance; that the familiar All-State sign of hands with "You are in Good Hands with All-State" was erected on Snyder's premises; that after the accident in which Elger was injured on or about March 1, 1959, he promptly reported the accident to Snyder and for the first time was told that All-State had not issued a policy.
The third-party defendant, Snyder, testified that in September 1957 he became an agent of All-State; that he had been trained solely by All-State; that he was employed as a soliciting agent, under an agreement whereby he was not to represent or solicit for any other company. His contract was introduced into evidence and indicated that he was to procure applications and forward them to the company for approval or disapproval. Snyder's testimony was that when McConnell sought insurance he called *86 the office about it and was informed that they would not issue a policy; that he thereafter had McConnell sign an application under the assigned risk plan, but that this application was never processed; that he did not tell McConnell the nature of the application, and never told McConnell that he did not have All-State coverage, which was the only company for which he wrote insurance, until after the accident. He also testified to the existence of the All-State sign conspicuously displayed upon his premises. He gave some indication that he tried to broker the coverage with another agency but did not succeed before the accident, but it was not indicated that McConnell had any knowledge of such efforts.
It was clear from the testimony that McConnell, either by reason of extensive advertising or acquaintance with agent wanted  and sought to obtain  a policy with All-State; that he knew Snyder to be an All-State agent by reputation and/or the sign displayed on his premises; that he gave his business to the agent, made provisions for the payment of the premium, and relied upon the agent's representations of coverage; that such representations were in fact false; and that by reason of the false representations he has suffered loss in that he has been required to employ personal counsel to represent him in the present suit, and stands to suffer in the future in the defense and possible recovery in the suit by Elger. Snyder is conclusively bound to answer to McConnell for damages sustained by him.
Next we come to the liability of All-State. By the pretrial order All-State denies the existence of a policy, states that Snyder never possessed actual or apparent authority to create a contract of insurance with McConnell, and denies payment or receipt of premium. There is no policy established nor written contract between the parties, but payment of premium to agent, employed solely by All-State, is admitted by the agent although it was not forwarded to the company by him. It is to be noted that *87 when Snyder called the company office he advised them of the application by McConnell, but no communication went out to McConnell advising him of the company's refusal. Snyder's contract with All-State was a printed contract of the company identified as an "Agent's Contract," and apparently the same as used with all of its agents, and by its terms it is clear that as between Snyder and All-State the agent did not have actual authority, but the question is whether or not All-State can escape liability to McConnell by its private contract of employment, the terms of which are not known by him, when the agent is held out to the public, by its posted display and the exclusive nature of the employment, as having apparent authority to create a contract of insurance. There is no evidence that the sign of All-State on Snyder's premises indicated in any manner that he was only a soliciting agent. It invited the public to do business by stating "You are in Good Hands with All-State," without warning that in dealing with its agent one must exercise care and prudence, because of a private agreement between the agent and the company.
One who represents that another is his agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent, is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be servant as if he were such. Restatement, Agency, par. 267. The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. This rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an apparent invitation from the defendant to enter into such relations with such servant. A manifestation of authority constitutes an invitation to deal with such servant and to enter into relations with him which are consistent with the apparent authority. *88 In our modern society liability insurance has become a practical necessity for the owners of automobiles, and each owner being an individual unto himself, either untrained or at best trained in the area of his personal employment, cannot be expected to know the intricacies of the operation of insurance companies, operated by experts in their field. He answers the plea of extensive advertising and symbols of protection, and in so doing he relies upon the skill of the person through whom he is invited to negotiate his insurance. He could not be expected to do more than sign an application and pay the premium with specific instructions.
It is, of course, the general rule that the principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume or which he holds the agent out to the public as possessing. The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question. Law v. Stokes, 32 N.J.L. 249 (Sup. Ct. 1867); J. Wiss & Sons Co. v. H.G. Vogel Co., 86 N.J.L. 618 (E. & A. 1914); Baurhenn v. Fidelity, etc., of Maryland, 114 N.J.L. 99 (E. & A. 1935); Ruppert v. Jernstedt & Co., 116 N.J.L. 214 (E. & A. 1936); Herron v. Sheridan Gardens, Inc., etc., 31 N.J. Super. 584 (App. Div. 1954).
I am of the opinion that there was an established apparent authority here, which could not be qualified by the secret instructions of the principal; which binds the third-party defendant, All-State, to the acts of Snyder so as to make it liable to McConnell for expenses of defending the suit instituted by Elger and saving him harmless, if a verdict should result against him, to the extent that the premium paid would purchase protection.